**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TASHUN BOWDEN-LEWIS,<br>*Plaintiff*<br>v.<br><br>THE HONORABLE RICHARD N. PALMER, CHAIRPERSON OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HIS OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE SHEILA M. PRATS, MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE ELLIOT N. SOLOMON MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HIS OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE RUSSELL MORIN, MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, MICHAEL JEFFERSON, ESQ., MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, HERMAN WOODARD, ESQ., MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY,<br>*Defendants* | : | CIVIL ACTION NO. 3:24cv01126(MPS)<br><br>September 27, 2024 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**I. INTRODUCTION** ……………………………………………………………………2

**II. FACTS** …………………………………………………………………………...4

**A. Plaintiff's Complaint**……………………………………………………4

**B. The Public Defender Services Commission**…………………………………7

**III. STANDARD OF REVIEW**…………………………………………………...8

**A. 12(b)(1) Lack of Subject Matter Jurisdiction** ……………………………….8

**B. 12(b)(6) Failure to State a Claim** ……………………………………………9

**IV. ARGUMENT**……………………………………………………………………11

**A. All Claims Brought Pursuant to 42 U.S.C. § 1983 Must be Dismissed**……..11

*1. The Plaintiff's Equal Protection and § 1981 Race Discrimination and Retaliation Claims Asserted In Counts One and Two Must Be Dismissed*………11

**a. The Plaintiff Has Not Stated a § 1983 Equal Protection Claim Based On Race or Color Discrimination**…………………………………………11

**b. The Plaintiff Has Not Stated a § 1981 Race/Color Discrimination Claim**…………………………………………………………………...14

**c. The Plaintiff Has Not Stated an Equal Protection Retaliation Claim**…...17

**d. The Plaintiff Has Not Stated a § 1981 Retaliation Claim**………………...17

*2. The Plaintiff's Procedural Due Process Claim Asserted In Count Three Must Be Dismissed*…………………………………………………………19

*3. Plaintiff Has Not Alleged Personal Involvement Required Under § 1983*………23

*4. The Defendants Are Entitled To Qualified Immunity With Respect To Counts One, Two, and Three Because They Acted Objectively Reasonably*……………..25

**B. The Plaintiff's Conn. Gen. Stat. §51-290(d) Claim Asserted In Count Four Must Be Dismissed**…………………………………………………………..29

*1. There is No Private Right Of Action Authorized by Conn. Gen. Stat. §51-290(d)*..29

*2. This Court Has No Subject Matter Jurisdiction Over The Conn. Gen. Stat. §51-290(d) Claims Because These Claims Are Barred By Sovereign Immunity And Eleventh Amendment Immunity*…………………………………………...31

**V. CONCLUSION**……………………………………………………………………33

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TASHUN BOWDEN-LEWIS,<br>*Plaintiff*<br>v.<br><br>THE HONORABLE RICHARD N. PALMER, CHAIRPERSON OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HIS OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE SHEILA M. PRATS, MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE ELLIOT N. SOLOMON MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HIS OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE RUSSELL MORIN, MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, MICHAEL JEFFERSON, ESQ., MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, HERMAN WOODARD, ESQ., MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY,<br>*Defendants* | : | CIVIL ACTION NO. 3:24cv01126(MPS)<br><br><br><br>September 27, 2024 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

## I. INTRODUCTION

The Plaintiff, TaShun Bowden-Lewis, brought this action against the individual members of the State of Connecticut Public Defender Services Commission ("Commission") in their individual and official capacities: Hon. Richard N. Palmer, Hon. Sheila M. Prats, Hon. Elliot N.

Solomon, Hon. Russell Morin, Michael Jefferson, Esq., and Herman Woodard, Esq. ("Defendants"). The Plaintiff's claims arise out of the Commission's removal of the Plaintiff from the position of Chief Public Defender and the events leading up to the removal of Plaintiff from that position. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Defendants hereby move to dismiss the Plaintiff's Complaint dated June 28, 2024 in its entirety. (Doc. #1). The Complaint should be dismissed in its entirety for the following reasons:

- Count One - Plaintiff's Equal Protection claim alleging discrimination due to her race/color brought pursuant to 42 U.S.C § 1981 and 42 U.S.C § 1983 must be dismissed because:
  - The Plaintiff has failed to plead a plausible race/color discrimination claim
  - The Plaintiff has failed to plead personal involvement by each Defendant
  - The Defendants are entitled to Qualified Immunity

- Count Two - Plaintiff's Equal Protection claim alleging retaliation pursuant to 42 U.S.C § 1981 and 42 U.S.C § 1983 must be dismissed because:
  - There is no cause of action for retaliation in violation of the Equal Protection clause
  - The Plaintiff has failed to plead a plausible retaliation claim pursuant to § 1981
  - The Plaintiff has failed to plead personal involvement by each Defendant
  - The Defendants are entitled to Qualified Immunity

- Count Three - Plaintiff's Procedural Due Process claim brought pursuant to 42 U.S.C § 1981 and 42 U.S.C § 1983 must be dismissed because:
  - The Plaintiff has failed to plead a plausible procedural due process claim
  - The Plaintiff has failed to plead personal involvement by each Defendant
  - The Defendants are entitled to Qualified Immunity

- Count Four - Plaintiff's claim of violation of Conn. Gen. Stat. § 51-290a must be dismissed because:
  - There is No Private Right Of Action Authorized by Conn. Gen. Stat. §51-290(d)
  - This Court Has No Subject Matter Jurisdiction Over The Conn. Gen. Stat. §51-290(d) Claims Because These Claims Are Barred By Sovereign Immunity And Eleventh Amendment Immunity

## II. FACTS

### A. Plaintiff's Complaint

The plaintiff alleges the following facts. The plaintiff is African American. (Complaint, ¶ 17). The plaintiff was appointed to the position of Chief Public Defender on or about June 3, 2022

to a four year term. (Complaint, ¶¶ 18, 19, 47).  At an unidentified time, and in an unidentified way, the Plaintiff "voiced opposition to the racially discriminatory manner in which the defendants …treated her."  (Complaint, ¶¶ 52, 53).  On October 3, 2023, the Commission issued the Plaintiff a formal letter of reprimand. (Complaint, ¶ 53).  At an unidentified time, and in an unidentified way, the Plaintiff "again complained that the defendants… had continued to subject her to racially discriminatory conduct." (Complaint, ¶ 57).  On February 9, 2024, the Commission suspended the plaintiff from her position as Chief Public Defender. (Complaint, ¶¶ 57, 58).  At some unidentified time, the Defendants "failed to objectively investigate the plaintiff's accusations of race and color discrimination." (Complaint, ¶¶ 59, 62, 64, 83).  At some unidentified time, the Defendants "publicly castigated and rebuked the plaintiff for voicing her good faith belief that she was being treated in a racially discriminatory manner." (Complaint, ¶ 61).  At an unidentified time, the Defendants invented "a fiction" that the Public Defender Services Commission has "overarching authority" over the Division Public Defender Services. (Complaint, ¶¶ 65, 66, 67, 72, 73).  At an unidentified time, the Defendants "interfered with the plaintiff's statutory authority concerning hiring of personnel" by giving instructions concerning "the appointment of a human resources director, and the staffing of the complex litigation unit." (Complaint, ¶ 71).

At an unidentified time the Commission hired a law firm to investigate the Plaintiff. (Complaint, ¶¶ 74, 75).   This investigation report found that the Plaintiff bullied both Division employees and the Defendants by accusing them of racism if they disagreed with her, and that the Plaintiff had created "an environment within OCPD where employees are fearful to raise any issues regarding her leadership, lest they be labeled racists." (Complaint, ¶ 75).  The investigation report further concluded that complaints about the Plaintiff were not, in fact, racially motivated, but rather were caused by the Plaintiff's "lack of clear communication and management skills."

(Complaint, ¶ 75). Specifically, as the Plaintiff directly quotes in her Complaint, the investigation report concluded:

> [t}his is a difficult area to evaluate because race could be an implicit factor in at least some witnesses' reactions to Ms. Bowden-Lewis 's priorities and actions as Chief, as one witness explained, former Chiefs also declined to grant Department heads' requests for additional attorneys, but they did not complain to the Commission about those Chiefs, while they did complain about Ms. Bowden-Lewis(insinuating that it is because Ms. Bowden-Lewis is black). **We find, however, that the driving factor that led to such complaints was not Ms. Bowden-Lewis' race, but her lack of clear communication and management skills.** Further, while perhaps legitimate in certain instances, **the sheer number of instances in which Ms. Bowden-Lewis has used race-based comments to insinuate or outright state that other employees or members of the Commission are racist based on their legitimate disagreements with her management of OCPD could be classified as bullying, and has contributed to an environment within OCPD where employees are fearful to raise any issues regarding her leadership, lest they be labeled racists**."

(Complaint, ¶ 75, emphasis added).

On March 5, 2024, the Commission notified the Plaintiff that it would be conducting a removal hearing and provided 16 specific charges in support. (Complaint, ¶ 76, 77, 78). One of the charges concerned "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission" consistent with the investigation finding that there was a large "number of instances in which Ms. Bowden-Lewis has used race-based comments to insinuate or outright state that other employees or members of the Commission are racist based on their legitimate disagreements with her management of OCPD." (Complaint, ¶ 75, 79, 81, 82). The Commission ultimately did not substantiate this charge. (Complaint, ¶ 85).

On April 16, 2024, Defendant Palmer wrote to Plaintiff's counsel and stated, "I wish to reiterate that the April 16, 2024, hearing is Ms. Bowden-Lewis's opportunity to be heard and fully respond, personally or through counsel, to the sixteen Charges listed in my March 5, 2024, letter. Connecticut General Statutes§ 51-290 (d) does not contemplate any further administrative review

of the matter, and the Commission urges Chief Public Defender Bowden-Lewis to present any and all evidence that she believes the Commission should consider before reaching its decision." (Complaint, ¶ 87).

Plaintiff's counsel responded "As I have previously communicated to you, I believe the United States Supreme Court, the Connecticut Supreme Court and the United States Court of Appeals for the Second Circuit have rejected the position adopted by [chairperson] Justice Palmer, and require that Bowden-Lewis be accorded the full due process protections of the fourteenth amendment and article first, § 8 of the Connecticut constitution, including a pre-termination hearing and, if necessary depending on the commission's action, a post-termination, full trial type hearing before an impartial, neutral adjudicator." (Complaint, ¶ 88).

The Commission conducted the removal hearing and all six Defendants attended. (Complaint, ¶ 89). The Commission issued its final decision removing the Plaintiff from her position in a written decision dated June 4, 2024 after substantiating nearly all of the charges against her. (Complaint, ¶ 90, 91, 93, 95, 99, 111).

**B. The Public Defender Services Commission**

The Public Defender Services Commission was created by Conn. Gen. Stat. § 51-289, which provides:

> **(a)** There is established a Public Defender Services Commission which shall consist of seven members appointed as follows:
>
> > **(1)** The Chief Justice shall appoint two judges of the Superior Court, or a judge of the Superior Court and any one of the following: A retired judge of the Superior Court, a former judge of the Superior Court, a retired judge of the Circuit Court, or a retired judge of the Court of Common Pleas;
> > **(2)** The speaker of the House, the president pro tempore of the Senate, the minority leader of the House and the minority leader of the Senate shall each appoint one member; and
> > **(3)** The Governor shall appoint a chairman.

The Commission appoints Public Defenders, the Deputy Public Defender, and the Chief Public Defender pursuant to a unique statutory framework. Conn. Gen. Stat. §§ 51-290, 51-293. Section 51-290(a) provides that "The Public Defender Services Commission shall appoint: (1) A Chief Public Defender for a term of four years and until the appointment and qualification of his successor; and (2) a Deputy Chief Public Defender for a term of four years who shall assist the Chief Public Defender.… Any vacancy in the offices of Chief Public Defender or Deputy Chief Public Defender shall be filled by the commission for the balance of the term of the person he succeeds." Section 51-293(a)(1) provides "The commission shall appoint a public defender for each judicial district and a public defender who shall handle appellate matters and provide legal support services to public defender offices, each of whom shall serve as public defender in the Superior Court and as many assistant public defenders and deputy assistant public defenders for the Superior Court as the criminal or delinquency business of the court may require." Section 51-290(d) vests the Commission with the sole authority to remove the Deputy Public Defender and the Chief Public Defender "by order of the commission for just cause after due notice and hearing." Similarly, § 51-293(d) vests the Commission to remove a "public defender, assistant public defender or deputy assistant public defender… by order of the commission after due notice and hearing."

## III.  STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

### A.  FRCP 12(b)(1) Lack of Subject Matter Jurisdiction

A case is properly dismissed for lack of jurisdiction under Federal Rules of Civil Procedure, Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. The plaintiff, as the party asserting jurisdiction, has the burden of establishing by a preponderance of the evidence that such jurisdiction exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d

Cir. 2000); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). In analyzing a motion to dismiss pursuant to Rule 12(b)(1), the Court must "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir. 1994). However, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l*, 968 F.2d 196, 198 (2d Cir. 1992); *see also Robinson,* 21 F.3d at 507. Moreover, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district may, if necessary, refer to evidence outside the pleadings. *Makarova*, 201 F.3d at 113.

Lack of subject matter jurisdiction is never waived. “If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.” Fed. R. Civ. P. 12(h)(3). “Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court sua sponte. If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action.” *Cave v. E. Meadow Union Free Sch. Dist*., 514 F.3d 240, 250 (2d Cir. 2008), citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976).

**B. FRCP 12(b)(6) Failure To State A Claim**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if “the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a ‘probability requirement,’ but it asks for more than a sheer possibility that a defendant has acted unlawfully.” *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted). In determining whether the plaintiff has met this standard, the Court must accept the

allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *In re NYSE Specialists Sec. Litig*., 503 F.3d 89, 95 (2d Cir. 2007). However, Courts do not accept as true the Plaintiff's legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in *Twombly,* the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 677-78 (internal citation and quotation omitted).

In ruling on a 12(b)(6) motion, the Court may consider the complaint, any exhibits attached to the complaint, and any documents explicitly or implicitly incorporated into the complaint by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.'" *Id.* at 153 quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

## IV. ARGUMENT

### A. All Claims Brought Pursuant to 42 U.S.C. § 1983 Must be Dismissed

#### 1. *The Plaintiff's Equal Protection and § 1981 Race Discrimination and Retaliation Claims Asserted In Counts One and Two Must Be Dismissed*

##### a. The Plaintiff Has Not Stated a § 1983 Equal Protection Claim Based On Race or Color Discrimination

The Plaintiff has not stated, and cannot state, a § 1983 Equal Protection claim. "[T]he class-of-one theory of equal protection has no application in the public employment context…." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 607 (2008); *see also Appel v. Spiridon*, 531 F.3d 138, 141 (2d Cir. 2008). Thus, the Plaintiff's Equal Protection claim must be based on selective enforcement alone. *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019). "To prevail on such a claim, a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Id*. (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). A selective enforcement claim "'requires proof of disparate treatment and impermissible motivation.' A plaintiff cannot merely rest on 'a demonstration of different treatment from persons similarly situated.' Instead, he must 'prove that the disparate treatment was *caused by* the impermissible motivation.'" *Hu,* 927 F.3d at 91 (emphasis in original, quoting *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005)). There is no cause of action for retaliation under the Equal Protection clause. *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996)("Although claims of retaliation are commonly brought under the First Amendment, *see infra*, and may also be brought under Title VII (claims of retaliation for complaints about racial discrimination are cognizable under 42 U.S.C. § 2000e-

3(a)), we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.”)*; Littlejohn v. City of New York*, 795 F.3d 297, 315 n.14 (2d Cir. 2015)(“The Equal Protection Clause does not protect against retaliation due to complaints of racial discrimination”).

Here, the Plaintiff has not alleged any facts that, taken as true, demonstrate that any of the **six Defendants** treated a similarly situated comparator differently from the Plaintiff. Indeed – the Plaintiff’s 702 paragraph Complaint fails to identify **any** individuals to whom the Plaintiff compares herself. Paragraphs 51, 55, 92, and 683 of the Complaint reference the Plaintiff’s “predecessor,” without naming the person to whom she is referring, but this is not sufficient because Plaintiff fails to allege that any of the **six Defendants** played any role in the predecessor’s employment. Plaintiff has not done so because she cannot.

This claim is brought not against the Plaintiff’s employer, but against six individual Defendants pursuant to 42 U.S.C. § 1983. Plaintiff must therefore plead personal involvement by each Defendant. *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023). Plaintiff’s failure to identify a comparator whose employment was overseen by the **six Defendants** and was treated differently than the Plaintiff by the **six Defendants** is fatal to her Equal Protection claim.

Further, Plaintiff has also failed to plead facts that, taken as true, demonstrate that any of the six Defendants was motivated to discriminate against the Plaintiff **due to her race or color**. Plaintiff repeatedly alleges, in conclusory fashion, that these six Defendants engaged in racial discrimination, but Plaintiff has failed to supply any actual factual allegations to support such a claim. (Complaint ¶¶ 1, 90, 91, 93 242-48, 252).

At the pleading stage, while a plaintiff does not have to plead a prima facie case to survive a motion to dismiss, the plaintiff's “'discrimination complaint ... must [still] at a minimum assert

nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Dooley,* 636 F. App'x at 20 quoting *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir.2014).

This Court would be in good company by dismissing the Plaintiff's Equal Protection claim in this case.  In *Martine's Service Center v. Town of Wallkill*, 554 F. App'x 32, 35 (2d Cir. 2014), the Second Circuit affirmed the dismissal of an Equal Protection selective enforcement claim where the plaintiff "fail[ed] to allege that Appellants were treated differently than others similarly situated. It merely states conclusory allegations asserting that Appellees violated  [the Appellant's] equal protection rights." In *Ighault v. City of New York*, Docket No. 22-cv-3196 (BMC), 2024 U.S. Dist. LEXIS 68361, at *4 (E.D.N.Y. Apr. 15, 2024), the District Court dismissed the plaintiff's equal protection claim, holding that "Plaintiff's equal protection claim borders on the frivolous. He does not identify even one similarly situated individual from whom he was treated differently." And in *Epstein v. County of Suffolk*, Docket No. 14-CV-0937(JS)(ARL), 2015 U.S. Dist. LEXIS 113079, at *29 (E.D.N.Y. Aug. 26, 2015), the District Court dismissed the plaintiff's equal protection claim, holding that "Plaintiff's Complaint only discusses actions taken with respect to Plaintiff, but there is no discussion whatsoever of any similarities between Plaintiff and others."

As in *Martine's Service Center, Ighault,* and *Epstein*, the Plaintiff here relies entirely on insufficient "threadbare recitals" and conclusory statements that she was subjected to discrimination.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (complaint including only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard), *quoting Twombly*, 550 U.S. at 555-57.

Accordingly, the Plaintiff's equal protection claim brought pursuant to § 1983 must be

dismissed.

**b. The Plaintiff Has Not Stated a § 1981 Race/Color Discrimination Claim**

"'Section 1981 provides, in pertinent part, that 'all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . .' This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment and is applicable to a plaintiff complaining of discrimination…." *Patterson v. County of Oneida*, 375 F.3d 206, 224-25 (2d Cir. 2004)(quoting 42 U.S.C. § 1981(a). and citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)). "[D]isparate treatment claim[s] under … § 1981… [are] subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas." Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). To state a discrimination claim under § 1981, plaintiffs must sufficiently allege that defendants acted with discriminatory intent. *Burgis v. New York City Dept. of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015)(citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)). "These bare allegations do not present circumstances that 'give rise to an inference of unlawful discrimination.'" *Burgis,* 798 F.3d at 69(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

"To state a claim under Section 1981, plaintiffs 'must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities.'" *Bibliotechnical Athenaeum v. American University of Beirut*, Docket No. 21-1642, 2022 U.S. App. LEXIS 6208, at *6 (2d Cir. Mar. 10, 2022)(quoting *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). The Defendants do not dispute that the Plaintiff is

African American or that the Commission removed her from her position as Chief Public Defender. But Plaintiff's § 1981 race discrimination claim suffers from the same infirmity as her Equal Protection claim. Namely – Plaintiff has failed to supply any non-conclusory facts demonstrating that any of the six Defendants acted with a discriminatory intent with respect to her race or color.

As with her Equal Protection discrimination claim, the Plaintiff has not alleged any facts that, taken as true, demonstrate that any of the **six Defendants** treated a similarly situated comparator differently from the Plaintiff. Indeed – the Plaintiff's 702 paragraph Complaint fails to identify **any** individuals to whom the Plaintiff compares herself. Paragraphs 51, 55, 92, and 683 of the Complaint reference the Plaintiff's "predecessor," without naming to whom she is referring, but this is not sufficient because Plaintiff fails to allege that any of the **six Defendants** played any role in the predecessor's employment. Plaintiff has not done so because she cannot.

This lawsuit is brought not against the Plaintiff's employer, but against six individual Defendants pursuant to 42 U.S.C. § 1983. Plaintiff must therefore plead personal involvement by each Defendant. *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023). Plaintiff's failure to identify a comparator whose employment was overseen by the **six Defendants** and was treated differently than the Plaintiff by the **six Defendants** is fatal to her Equal Protection claim.

Further, Plaintiff has also failed to plead facts that, taken as true, demonstrate that any of the six Defendants was motivated to discriminate against the Plaintiff **due to her race or color**. Plaintiff repeatedly alleges, in conclusory fashion, that these six Defendants engaged in racial discrimination, but Plaintiff has failed to supply any actual factual allegations to support such a claim. (Complaint ¶¶ 1, 90, 91, 93 242-48, 252).

At the pleading stage, while a plaintiff does not have to plead a prima facie case to survive

a motion to dismiss, the plaintiff's "'discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.'" *Dooley,* 636 F. App'x at 20 quoting *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir.2014).  Here, the Plaintiff has failed to do so.  Accordingly, the Plaintiff's § 1981 race/color discrimination claim brought pursuant to § 1983 must be dismissed.

As with the Plaintiff's Equal Protection claim, "courts have dismissed Section 1981 claims where the factual allegations fail to demonstrate any discriminatory animus." *Zhang v. Centene Management Co.*, Docket No. 21 CV 5313 (DG) (CLP), 2023 U.S. Dist. LEXIS 68718, at *21-22 (E.D.N.Y. Feb. 2, 2023)(citing to *McDowell v. North Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d at 81 and *Grimes v. Fremont Gen'l Corp.*, 785 F. Supp. 2d 269, 296-97 (S.D.N.Y. 2011) (collecting cases); *Cheruvu v. Healthnow New York, Inc.,* No. 20 CV 808, 2022 U.S. Dist. LEXIS 144476, 2022 WL 3346918, at *6 (W.D.N.Y. Aug. 12, 2022)).   In *Annabi v. New York University*, Docket No. 22-cv-3795 (LJL), 2023 U.S. Dist. LEXIS 176661, at *65 (S.D.N.Y. Sep. 29, 2023), the court dismissed the complaint because "Plaintiff fails to allege that he was treated differently than those who but for their race were similarly situated or to make any allegation of racial animus."   In *Rodriguez v. New York University*, 2007 U.S. Dist. LEXIS 3242, at *1 (S.D.N.Y. Jan. 13, 2007)(adopting recommended ruling of *Rodriguez v. N. Y. University*, 2006 U.S. Dist. LEXIS 97732, at *16 (S.D.N.Y. Nov. 17, 2006)), the court dismissed the complaint where "The Complaint thus does not allege facts to support an inference that the University was motivated by racial prejudice in its treatment of Mr. Rodriguez during the course of the disciplinary proceedings against him."  The Court should do the same here.

Accordingly, the Plaintiff's § 1981 race/color discrimination claim brought pursuant to § 1983 must be dismissed.

**c. The Plaintiff Has Not Stated an Equal Protection Retaliation Claim**

In Count Two, Plaintiff states that the Count is a claim for "Unlawful Retaliation in Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title 42 U.S.C. §§ 1981 and 1983." However, there is no cause of action for retaliation under the Equal Protection clause. *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996). In *Bernheim*, the Second Circuit held that "[a]lthough claims of retaliation are commonly brought under the First Amendment, *see infra*, and may also be brought under Title VII (claims of retaliation for complaints about racial discrimination are cognizable under 42 U.S.C. § 2000e-3(a)), we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination." Subsequent to the *Bernheim* decision, the Second Circuit again held in *Littlejohn v. City of New York*, 795 F.3d 297, 315 n.14 (2d Cir. 2015) that "[t]he Equal Protection Clause does not protect against retaliation due to complaints of racial discrimination." Plaintiff's retaliation claim brought pursuant to the Equal Protection clause must therefore be dismissed.

**d. The Plaintiff Has Not Stated a § 1981 Retaliation Claim**

Count Two is also brought pursuant to § 1981. Unlike the Equal Protection clause, § 1981 "does encompass retaliation claims." *Littlejohn v. City of New York*, 795 F.3d 297, 315 n.14 (2d Cir. 2015)(citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008)). "To establish a prima facie case of retaliation under Section 1981, Plaintiff must demonstrate that (1) she engaged in protected activity; (2) the defendant was aware of that activity; (3) she was subject to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and that materially adverse action or actions." *Underwood v. RTX Corp.*, Docket No. 3:23-CV-310 (SVN), 2024 U.S.

Dist. LEXIS 155368, at *16 (D. Conn. Aug. 29, 2024)(citing *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d. Cir. 2023)).

The sum and substance of the Plaintiff's § 1981 retaliation claim is that she, at some unidentified point in time, opposed discrimination in some unidentified way, and that she also suffered three adverse actions – a written reprimand, paid administrative leave, and the removal from her position – at some point after the vague, undefined protected activity.

This claim is brought not against the Plaintiff's employer, but against six individual Defendants pursuant to 42 U.S.C. § 1983. Plaintiff must therefore plead personal involvement by each Defendant. *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023). Plaintiff has not identified any specific actions taken by any individual defendant that demonstrates retaliatory animus. Nor is temporal proximity alone enough to plead a plausible claim where the Defendants are not the employer, but are instead six individuals.

In *Dorsey v. Fisher*, 468 F. App'x 25, 27-28 (2d Cir. 2012), the Second Circuit explained that "Dorsey's claims against Cappello and Gonyea fail because Dorsey has not alleged a causal connection between their acts and Dorsey's protected speech. To sufficiently allege a causal connection, Dorsey's allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.' With respect to Cappello, Dorsey has not provided any plausible reason why Cappello would file an allegedly false misbehavior report other than that Dorsey filed a grievance against Mitchell. This alone is insufficient to show Cappello's retaliatory intent. Similarly, the fact that Dorsey filed a grievance against Mitchell does not support an inference that Gonyea retaliated against Dorsey by sentencing him to seventy-five-days' solitary confinement. Finally, Dorsey's contention that Gonyea retaliated against him because Dorsey filed a separate § 1983 action against Gonyea is insufficient to show

retaliatory intent. The § 1983 action was filed at an unspecified point in the year prior to Dorsey's disciplinary hearing before Gonyea. Without any more specificity, that temporal connection does not suffice to plead causation." (Quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)

In *Wooding v. Winthrop University Hospital*, Docket No. 16-cv-4477 (ADS)(ARL), 2017 U.S. Dist. LEXIS 90559, at *45 (E.D.N.Y. June 12, 2017), the District Court dismissed the plaintiff's § 1981 retaliation claim, holding that "[t]he Plaintiff did not allege any facts that connect the individual Defendants, in any meaningful way, to the Plaintiff's retaliation claim. None of the individual Defendants is affirmatively linked with the decision to terminate the Plaintiff."

Here, the Plaintiff has not alleged that she engaged in specific protected activity with respect to any of the six Defendants or that any of the six Defendants took specific action against her as a result. Rather, Plaintiff alleges in conclusory fashion that at an unidentified time, and in an unidentified way, the Plaintiff "voiced opposition to the racially discriminatory manner in which the defendants …treated her" (Complaint, ¶¶ 52, 53), and that at an unidentified time, and in an unidentified way, the Plaintiff "again complained that the defendants… had continued to subject her to racially discriminatory conduct." (Complaint, ¶ 57).

Plaintiff has failed to provide any factual allegation that, taken as true, demonstrate that she opposed discriminatory activity of **any individual Defendant**, what the specific conduct was that the Plaintiff opposed, or what conduct each **individual Defendant** engaged in that would demonstrate retaliatory animus. Accordingly, the Plaintiff's § 1981 race/color discrimination claim brought pursuant to § 1983 must be dismissed.

2. *The Plaintiff's Procedural Due Process Claim Asserted In Count Three Must Be Dismissed*

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend

XIV, § 1. The Due Process Clause "was intended to prevent government from abusing [its] power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 126 (1992). "In order to prevail on a due process claim, a claimant must [1] identify a constitutionally protected property or liberty interest and [2] demonstrate that the government has deprived that party of the interest without due process of law." *Weinstein v. Albright,* 261 F.3d 127, 134 (2d Cir. 2001).

Constitutionally protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972).  For a person to have a property interest in a benefit, he "'clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Ansell v. D'Alesio,* 485 F.Supp.2d 80, 85 (D.Conn.2007) (citing *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005). In the context of employment, "a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." *Legg v. Dellavolpe,* 228 F.Supp.2d 51, 61 (D.Conn.2002) (citing *S & D Maintenance Co., Inc. v. Goldin,* 844 F.2d 962, 967 (2d Cir.1988)).

In analyzing procedural due process claims, courts must determine: (i) whether a plaintiff possessed a protected liberty or property interest; and (ii) what process a plaintiff was due before any deprivation of such interest. *Roman v. Valleca*, No. 3:11CV1867 (VLB), 2012 WL 4445475, at *12 (D. Conn. Sept. 25, 2012) (citing *Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003)).  In the context of public sector  employment, it is well established that "Constitutional due process requires, prior to being deprived of a significant property interest such as permanent civil service employment: (1) 'oral or written notice of the charges against [the employee]'; (2) 'an explanation

of the employer's evidence'; and (3) 'an opportunity to present [the employee's] side of the story' and 'to present reasons, either in person or in writing, why [the] proposed action should not be taken.'" *Coles v. Erie Cty.*, 629 F. App'x 41, 43 (2d Cir. 2015) (*quoting Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

Here, for the purpose of this Motion, the Defendants do not contest that Plaintiff had a Constitutionally protected property interest in her employment. However, Plaintiff received all of the process to which she was due both prior to, and subsequent to, her removal from the position of Chief Public Defender. Plaintiff's procedural due process claim therefore fails.

Plaintiff admits that prior to the termination of her employment, the Commission apprised her of the 16 charges against her and held a hearing at which she had the opportunity to present her side of the story. (Complaint, ¶ 76, 77, 78, 87, 527, 528). The Commission ultimately removed the Plaintiff from the position of Chief Public Defender, and the Plaintiff subsequently sought judicial review of the Commission's substantive decision. *See Bowden-Lewis v Public Defender Services Commission*, HHB-CV24-6087853-S**.** That case is currently pending before the Connecticut Superior Court, and this Court may take judicial notice of that pending action.

In her Complaint, Plaintiff asserts two claims – the first claim is that six Individual Defendants violated her Procedural Due Process rights where they did not supply a post-deprivation process (Complaint ¶¶ 530, 531, 532) and that the six Defendants were not neutral. (Complaint ¶¶ 530, 531, 533). Both claims are legally insufficient and Plaintiff's Procedural Due Process claim must be dismissed.

First, as the Plaintiff's Complaint demonstrates, the procedures for the removal hearing fully complied with the Connecticut Supreme Court case Plaintiff cites - *Bartlett v Krause,* 209 Conn. 352, 377 (1988)(Complaint ¶¶ 527-30). Specifically, *Bartlett* held that - in a case very

much like this one - where the Connecticut statute did not permit or provide a separate post-deprivation hearing, that procedural due process is satisfied where the pre-deprivation hearing provides the following: "First, notification in writing of the specific grounds for the proposed dismissal. Second, the meaningful opportunity to be heard in her own defense, personally or by counsel, at a public hearing, before the defendants have the power of dismissal. This meaningful opportunity includes not only the production at the public hearing, by the defendants, of the person or persons whose complaints form the basis of the ground or grounds in the notification of grounds for potential dismissal, but also the opportunity to examine at that time any or all of these complainants should the plaintiff decide to do so. Third, a statement, oral or in writing, of the reason or reasons upon which the defendants premise termination if that is the sanction imposed." *Bartlett v. Krause*, 209 Conn. 352, 380-81(1988).

Here, the Plaintiff expressly admits that the Commission provided her with the following pre-deprivation process: "notification in writing of the specific grounds for the proposed dismissal," "meaningful opportunity to be heard in her own defense, personally or by counsel, at a public hearing, before the defendants have the power of dismissal," and "a statement, oral or in writing, of the reason or reasons upon which the defendants premise termination if that is the sanction imposed." (Complaint ¶¶ 76, 77, 78, 89, 90, 91, 93, 95, 99, 111, 527-30).  Furthermore, Plaintiff has brought a direct appeal from the Commission's decision to remove her from her position of Chief Public Defender, which has provided her with a post-deprivation process. *See Farquharson v. Lafayette*, Docket No. 19-cv-3446 (NSR), 2020 U.S. Dist. LEXIS 61810, at *22 (S.D.N.Y. Apr. 7, 2020)(judicial review can satisfy procedural due process even without an adequate pre-deprivation process).

Plaintiff's claim that the Commission members violated her Procedural Due Process rights

because they did not recuse themselves also fails. *Bartlett* explained that "we hasten to add that while an 'impartial decisionmaker is an essential element of due process' one does not cease to be an impartial decisionmaker simply because he has made a 'conditional decision' to terminate an employee 'pending further developments in an administrative process that had not then closed.' In addition, and importantly, administrative decisionmakers like judicial ones are entitled to a 'presumption of honesty and integrity.'" *Bartlett,* 209 Conn. at 379 n.20 (quoting *Bowens* v. *North Carolina Department of Human Resources*, 710 F.2d 1015, 1020 (4th Cir. 1983); *Morris* v. *Danville*, 744 F.2d 1041, 1044 (4th Cir. 1984); and citing *Withrow* v. *Larkin*, 421 U.S. 35, 47 (1975)). The Second Circuit has reached the same result. "[M]any agency adjudicative authorities are appointed by the agency itself, and without some specific showing of conflict of interest or reason for disqualification, we assume they are unbiased." *Doolen v. Wormuth*, 5 F.4th 125, 135 (2d Cir. 2021). There was no legal requirement that the Defendants recuse themselves, and the failure to do so does not give rise to a Procedural Due Process Claim.

Plaintiff's Procedural Due Process claim must therefore be dismissed.

3. *Plaintiff Has Not Alleged Personal Involvement Required Under § 1983*

As addressed briefly in each the preceding subsections, the Plaintiff's race/color discrimination and retaliation claims as well as her procedural due process claims brought against the individual defendants in their individual capacities pursuant to § 1983 must be dismissed because she has not set forth sufficient allegations to establish the individual defendants' personal involvement in the alleged violations. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). A defendant is personally involved where "he directly participated -- in the alleged constitutional deprivations.

‘’Direct participation' as a basis of liability in this context requires ***intentional participation*** in the conduct constituting a violation of the victim's rights by one who ***knew of the facts rendering it illegal***.’" *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005)(emphasis added, quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that ***each Government-official defendant, through the official's own actions****,* has violated the Constitution." Emphasis added).

In looking at personal involvement, “complaints that rely on group pleading’ and ‘fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Gonzalez v. Yepes,* Docket No. 3:19-cv-00267 (CSH), 2019 U.S. Dist. LEXIS 105847, at *20-21 (D. Conn. June 25, 2019); *see also Brown v. Town of Amherst*, Docket No. 1:23-CV-00993 EAW, 2024 U.S. Dist. LEXIS 174795, at *28-29 (W.D.N.Y. Sep. 26, 2024)(“Here, Plaintiffs' use of impermissible ‘group pleading,’ without a proper identification of the personal involvement of each defendant, is not adequate in the context of § 1983”); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, No. 22-CV-09870 (JLR), 2024 WL 477031, at *4 (S.D.N.Y. Feb. 7, 2024) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." (quoting *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021))); *Abadi v. NYU Langone Health System, 2024 U.S. Dist. LEXIS 18796, at *5 (S.D.N.Y. Feb. 2, 2024)* (noting that group pleading is “routinely rejected by courts as insufficient to state a claim as to any particular defendant")).

Here, the Complaint contains only a generic description of the events that allegedly transpired, with "no factual basis to distinguish" each Defendant's specific conduct. The

Complaint does not allege in what way, if any, each individual Defendant participated in the alleged unlawful acts, and if so, how. Plaintiff's claim is focused on her removal from the position of Chief Public Defender and the events leading up to it. Plaintiff fails to allege with any particularity the individualized actions of each Defendant with respect to the decisions made by the Commission. The Plaintiff's use of group pleading fails to satisfy the requirement that litigants plead "precisely who did what and how such behavior is actionable under the law." *Gonzalez,* 2019 U.S. Dist. LEXIS at *23. Thus, the Court should dismiss the entire Complaint based on the failure to plead particularized personal involvement for each of the Defendants.

4. *The Defendants Are Entitled To Qualified Immunity With Respect To Counts One, Two, and Three Because They Acted Objectively Reasonably*

The Defendants are entitled to qualified immunity because it was objectively reasonable for them to believe that their acts did not violate the Plaintiff's rights to be free from race or color discrimination and retaliation, or the Plaintiff's right to Procedural Due Process. "Qualified immunity attaches when an official's conduct ''does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' While this Court's case law 'do[es] not require a case directly on point' for a right to be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.' In other words, immunity protects' 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 580 U.S. 73, 78-79 (2017)(quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

The inquiry in resolving the qualified immunity question is thus three-fold. "First a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)(internal citations omitted). Third, the Court must decide whether "it was objectively

reasonable [for the defendants] to believe that their acts did not violate these clearly established rights." *Armore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (internal citations omitted).  It is within the court's discretion to decide which of these steps to address first.  *Pearson*, 555 U.S. at 236.  In order for the court to determine if an official acted objectively reasonably, the court must look at the particular facts of the case. *Hurlman v. Rice*, 927 F.2d 74, 78-79 (2d Cir. 1991).

The Plaintiff first claims that she was subjected to discrimination due to her race and color and retaliation for having engaged in protected activity.  According to the undisputed facts as supplied by the Plaintiff, an independent third party conducted an investigation into the Plaintiff's allegations of racism in the Division of Public Defender Services. Complaint, ¶¶ 74, 75).  The report found:

> "[t}his is a difficult area to evaluate because race could be an implicit factor in at least some witnesses' reactions to Ms. Bowden-Lewis 's priorities and actions as Chief, as one witness explained, former Chiefs also declined to grant Department heads' requests for additional attorneys, but they did not complain to the Commission about those Chiefs, while they did complain about Ms. Bowden-Lewis (insinuating that it is because Ms. Bowden-Lewis is black). **We find, however, that the driving factor that led to such complaints was not Ms. Bowden-Lewis' race, but her lack of clear communication and management skills.** Further, while perhaps legitimate in certain instances, **the sheer number of instances in which Ms. Bowden-Lewis has used race-based comments to insinuate or outright state that other employees or members of the Commission are racist based on their legitimate disagreements with her management of OCPD could be classified as bullying, and has contributed to an environment within OCPD where employees are fearful to raise any issues regarding her leadership, lest they be labeled racists**."

(Complaint, ¶ 75, emphasis added).

Where an independent third party determined that Plaintiff bullied both Division employees and the Defendants by accusing them of racism if they disagreed with her, and that the Plaintiff had created "an environment within OCPD where employees are fearful to raise any issues regarding her leadership, lest they be labeled racists," the Commission members did not act

objectively unreasonable by including this specific issue as a Charge to investigate.  Particularly where the Plaintiff admits that the Commission did not find her guilty of this charge. (Complaint, ¶ 85).

Nor has the Plaintiff identified any other specific actions taken by any of the Defendants that would demonstrate a knowing violation of her statutory or Constitutional rights. Merely engaging in their statutorily mandated duties cannot, without more, demonstrate that any of the Defendants knowingly violated the Plaintiff's rights.  While the right to be free from discrimination and retaliation is clearly established, the Plaintiff's allegations consist of nothing more than the facts that she is a member of protected class, the Commission removed her from her position, and she believes that her protected class was the cause.  These allegations do not, and cannot, defeat the Defendants' Qualified Immunity.

The Defendants' entitlement to Qualified Immunity is even more clear when it comes to the Plaintiff's Procedural Due Process claim.   Here, the Plaintiff expressly admits that the Commission followed the requirements laid out by the Connecticut Supreme Court in *Bartlett v Krause,* 209 Conn. 352, 377 (1988).

On April 12, 2024, Defendant Palmer wrote a letter to Plaintiff's counsel stating the following:

> As I advised in my March 5, 2024, letter to Chief Public Defender Bowden-Lewis and again in my letter to her on March 28, 2024, at that Hearing, she has the right to counsel, the right to testify or to provide written responses to the Charges contained in my March 5, 2024, letter, the right to present witnesses, and the right to present closing argument. Documents containing written factual substantiation for the sixteen Charges set forth in my March 5, 2024, letter were emailed and hand-delivered to Chief Public Defender Bowden-Lewis on March 28, 2024, and thereafter, at your request, those materials were emailed to you. A few additional supplemental documents have since been provided to Chief Public Defender Bowden-Lewis and to you. I wish to reiterate that the April 16, 2024, hearing is Ms. Bowden-Lewis's opportunity to be heard and fully respond, personally or through counsel, to the sixteen Charges listed in my March 5, 2024, letter.

> Connecticut General Statutes § 51-290 (d) does not contemplate any further administrative review of the matter, and the Commission urges Chief Public Defender Bowden-Lewis to present any and all evidence that she believes the Commission should consider before reaching its decision.

(Complaint, ¶ 528).

The procedure that the Commission followed, and that the Plaintiff does not dispute, specifically met the procedure expressly identified by the Connecticut Supreme Court where there is no statutory or contractual post-deprivation process provided.   Under *Bartlett*, under such circumstances, the following will satisfy procedural due process: "First, notification in writing of the specific grounds for the proposed dismissal. Second, the meaningful opportunity to be heard in her own defense, personally or by counsel, at a public hearing, before the defendants have the power of dismissal. This meaningful opportunity includes not only the production at the public hearing, by the defendants, of the person or persons whose complaints form the basis of the ground or grounds in the notification of grounds for potential dismissal, but also the opportunity to examine at that time any or all of these complainants should the plaintiff decide to do so. Third, a statement, oral or in writing, of the reason or reasons upon which the defendants premise termination if that is the sanction imposed." *Bartlett v. Krause*, 209 Conn. 352, 380-81(1988).

The existence of the *Bartlett* decision demonstrates that the Defendants acted reasonably in relying on Connecticut Supreme Court law, and further, that, to the extent that the *Bartlett* procedure is ever deemed to be legally insufficient to satisfy procedural due process in the future, that right was not clearly established at the time that the events in this case occurred.   The Defendants are therefore entitled to qualified immunity because they did not knowingly violate the Plaintiff's procedural due process rights where they expressly followed the *Bartlett* procedure.

Thus, the defendants acted objectively reasonably and they are entitled to Qualified Immunity with respect to  Counts One, Two, and Three.

**B. The Plaintiff's Conn. Gen. Stat. §51-290(d) Claim Asserted In Count Four Must Be Dismissed**

Count Four asserts a claim for violation of Conn. Gen. Stat. §51-290(d). This claim must be dismissed for two reasons. First, because Conn. Gen. Stat. §51-290(d) does not grant the Plaintiff a private right of action, and second because the State of Connecticut has not consented to be sued in Federal Court for any violations of this statute, nor has it waived immunity to suit for violations of this statute.

*1. There is No Private Right Of Action Authorized by Conn. Gen. Stat. §51-290(d)*

This Court does not have subject matter jurisdiction over Plaintiff's claims brought pursuant to Conn. Gen. Stat. §51-290(d) because there is no private cause of action for claims brought under that section. In determining whether a statute grants a private cause of action, the Connecticut Supreme Court has explained that "'[w]e begin our analysis with the well settled fundamental premise that there exists a presumption in Connecticut that private enforcement does not exist unless expressly provided in a statute. In order to overcome that presumption, the [plaintiffs bear] the burden of demonstrating that such an action is created implicitly in the statute.'" *Gerardi v. City of Bridgeport*, 294 Conn. 461, 468-69 (2010)(quoting *Provencher v. Enfield*, 284 Conn. 772, 777-78 (2007)).

There is no statute that grants Plaintiff the ability to bring a private enforcement action under Conn. Gen. Stat. §51-290(d). Not only does Plaintiff not cite to such a statute, but a thorough review of Chapter 887 of Title 51 in the Connecticut General Statutes (§§ 51-289 — 51-300) demonstrates that there is no enforcement statute in this Chapter. There is therefore no express provision granting a private right of action. That does not end the inquiry, however.

"'In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose . . . benefit the

statute was enacted . . . ? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?'" *Gerardi v. City of Bridgeport*, 294 Conn. 461, 468-69 (2010)(quoting *Napoletano v. CIGNA Healthcare of Connecticut, Inc*., 238 Conn. 216, 249 (1996), cert. denied, 520 U.S. 1103 (1997). "'The stringency of the test is reflected in the fact that, since this court decided *Napoletano*, we have not recognized an implied cause of action despite numerous requests." *Gerardi,* 294 Conn. at 469-70 (quoting *Provencher,* 284 Conn. 778-79).

Here, while the Plaintiff held the position of Chief Public Defender for a period of time, and this statute plainly affected her, there is no indication of legislative intent to create a private remedy for her and the purpose of Chapter 887 is not consistent with any implied remedy for the Plaintiff.  "[I]f the legislature had intended to provide the private remedy of a civil cause of action for enforcement of [§51-290(d)] it easily could have added language to §51-290(d).  to indicate that such an action was authorized and intended." *Gerardi,*  294 Conn. at 472.

Furthermore, even if a Connecticut court was inclined to create a brand-new cause of action under Conn. Gen. Stat. §51-290(d), it surely would not do so in the employment context, where the Connecticut legislature has already enacted a comprehensive legislative scheme providing for meaningful remedies for violations of equal protection in the employment context. *See Binette v. Sabo*, 244 Conn. 23, 41 (1998); Conn. Gen. Stat. § 46a- 60 et seq.

Count Four must therefore be dismissed as there is no private cause of action authorized by Conn. Gen. Stat. §51-290(d).

2. *<u>This Court Has No Subject Matter Jurisdiction Over The Conn. Gen. Stat. §51-290(d) Claims Because These Claims Are Barred By Sovereign Immunity And Eleventh Amendment Immunity</u>*

Even if Conn. Gen. Stat. §51-290(d) authorized a private cause of action, which it does not, Count Four must nonetheless be dismissed because the State of Connecticut has not waived immunity to suit under this statute and has not consented to be sued in federal court on claims brought pursuant to this statute.

Claims brought against the Defendants in their official capacities are claims against the State. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Further, pursuant to *Spring v. Constantino*, 168 Conn. 563, 362 A.2d 871 (1975)), the State is the real party in interest in Count Four, regardless of how the Plaintiff has fashioned her Complaint. "[T]he criteria for determining whether a suit is against the state as the real party interest: '(1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability.'" *Great Plains Lending. LLC v. Dept. of Banking*, 339 Conn. 112, 151 n.17 (2021)(quoting *Spring*, 168 Conn. at 568). All four criteria of the *Spring* test are met here. This suit is brought against six state officials, this suit exclusively concerns a matter in which the Defendants represent the State, the State is the real party against whom relief is sought because the Plaintiff seeks money damages as well as injunctive relief to be reinstated to her position as a State employee, and the Plaintiff seeks an outcome here that will determine how the State carries out its responsibilities with respect to the entire Division of Public Defender Services. Count Four is therefore brought against the State.

The State has not waived its sovereign immunity to be sued in either State or Federal Court for claims of violations of Conn. Gen. Stat. §51-290(d). As interpreted by the Supreme Court and

the Second Circuit, the Eleventh Amendment bars federal jurisdiction over suits against a state unless that state has expressly waived immunity or Congress validly authorized such a suit through Section Five of the Fourteenth Amendment. *See Kimel v. Florida Bd. Of Regents,* 528 U.S. 62, 73, 87–90 (2000); *see also In re Charter Oak Assocs.,* 361 F.3d 760, 765 (2d Cir.2004) citing *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996) ("The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution."). Further, any such waiver of sovereign immunity must "be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Id.* (emphasis in original). Eleventh Amendment immunity applies to the state itself as well as to state agencies. *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) ("'[A] governmental entity is entitled to Eleventh Amendment immunity only if it is more like an arm of the State, such as a state agency…'").

The United States Supreme Court has further concluded that pendent jurisdiction does not override the Eleventh Amendment in cases based on state law. *Pennhurst,* 465 U.S.at 120-21. "[P]endent jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment." *Id.* at 121. Likewise, the Second Circuit has recognized the Eleventh Amendment bar to the exercise of pendent jurisdiction over state law claims. *See*, *e.g., Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988).

Here, Connecticut has not consented to suit for violations of Conn. Gen. Stat. §51-290(d) in either its own courts or in Federal District Court. Nor has Congress authorized the abrogation

of state immunity for Conn. Gen. Stat. §51-290(d) claims. Thus, both the Eleventh Amendment and sovereign immunity absolutely bar all of Plaintiff's claims in Count Four and all such claims must be dismissed for lack of subject matter jurisdiction.[1]

## V. CONCLUSION

For all the foregoing reasons, the Defendants respectfully move that this Court grant the Defendants' Motion to Dismiss and dismiss the Plaintiff's Complaint in its entirety.

DEFENDANTS

THE HONORABLE RICHARD N. PALMER, CHAIRPERSON OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HIS OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE SHEILA M. PRATS, MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE ELLIOT N. SOLOMON MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HIS OFFICIAL and INDIVIDUAL CAPACITY, HONORABLE RUSSELL MORIN, MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, MICHAEL JEFFERSON, ESQ., MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY, HERMAN WOODARD, ESQ., MEMBER OF THE CONNECTICUT PUBLIC DEFENDER SERVICES COMMISSION, IN HER OFFICIAL and INDIVIDUAL CAPACITY,

[1] There are additional defects in the Plaintiff's pleadings – namely all of the same defects present in Counts One, Two, and Three. Given that there is no subject matter jurisdiction over Plaintiff's state law claims in this matter however, the Defendants have not briefed these additional issues. The Defendants reserve the right to address those deficiencies should it become necessary.

WILLIAM TONG
ATTORNEY GENERAL

By: /s/ *Colleen B. Valentine*
Colleen B. Valentine
Assistant Attorney General
Employment Section
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Tel: (860) 808-5340
Fax: (860) 808-5383
E-mail: Colleen.Valentine@ct.gov
Federal Bar # ct28932

**CERTIFICATION**

I hereby certify that on September 27, 2024, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Colleen B. Valentine*
Colleen B. Valentine (# ct28932)
Assistant Attorney General