## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TaSHUN BOWDEN-LEWIS, | : | CIVIL NO. |
| Plaintiff, | : | 3:24-cv-01126-MPS |
| | : | |
| | : | |
| V. | : | |
| | : | |
| | : | |
| THE HONORABLE RICHARD N. PALMER, | : | |
| CHAIRPERSON OF THE CONNECTICUT | : | |
| PUBLIC DEFENDER SERVICES COMMISSION, | : | |
| IN HIS OFFICIAL and INDIVIDUAL CAPACITY; | : | |
| HONORABLE SHEILA M. PRATS, MEMBER | : | |
| OF THE CONNECTICUT PUBLIC DEFENDER | : | |
| SERVICES COMMISSION, IN HER INDIVIDUAL | : | |
| and OFFICIAL CAPACITY; HONORABLE | : | |
| ELLIOT N. SOLOMON, MEMBER OF THE | : | |
| CONNECTICUT PUBLIC DEFENDER SERVICES | : | |
| COMMISSION, IN HIS INDIVIDUAL and OFFICIAL | : | |
| CAPACITY; HONORABLE RUSSELL MORIN, | : | |
| MEMBER OF THE CONNECTICUT PUBLIC | : | |
| DEFENDER SERVICES COMMISSION, IN HIS | : | |
| INDIVIDUAL and OFFICIAL CAPACITY; | : | |
| MICHAEL JEFFERSON, ESQ., MEMBER OF THE | : | |
| THE CONNECTICUT PUBLIC DEFENDER | : | |
| SERVICES COMMISSION, IN HIS INDIVIDUAL | : | |
| and OFFICIAL CAPACITY; and HERMAN | : | |
| WOODARD, ESQ., MEMBER OF THE | : | |
| CONNECTICUT PUBLIC DEFENDER SERVICES | : | |
| COMMISSION, IN HIS INDIVIDUAL and OFFICIAL | : | |
| CAPACITY, | : | |
| Defendants. | : | OCTOBER 10, 2024 |

### I.    Introduction

In moving to dismiss the plaintiff's causes of action, the defendants misstate the pleading

requirements applicable to causes of action that raise claims of race discrimination and unlawful

retaliation in violation of the equal protection clause of the Fourteenth Amendment to the United

States Constitution, and Title 42 U.S.C. §§ 1981 and 1983.  Even more troubling,[1]  is the

defendants' reliance on Second Circuit case law, whose holdings had been superseded by

subsequent rulings out of the Second Circuit dating back to 2015, in advancing the proposition

that the Equal Protection Clause of the Fourteenth Amendment does not recognize a cause of

action for unlawful retaliation.   Contrary to the defendants' assertion, the Second Circuit

unequivocally held in the case of *Vega v. Hempstead Union Free Sch. Dist*, 801 F.3d 72, 80 (2d

Cir. 2015) that the Equal Protection Clause of the Fourteenth Amendment allows for a cause of

action based on a claim that an individual's opposition to race discrimination resulted in the

complaining individual being subjected to an adverse action.  "The Second Circuit previously

held that retaliation claims were not viable under the Equal Protection Clause. *Bernheim v. Litt*,

79 F.3d 318, 323 (2d Cir. 1996). It then held that such claims were viable, without discussing

*Bernheim. Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010). In *Vega [v. Hempstead Union Free*

*Sch. Dist,* 801 F.3d 72, 82 (2d Cir. 2015)]*, the Second Circuit resolved the conflict between

*Bernheim* and *Hicks*, and concluded that retaliation claims under the Equal Protection Clause

were a viable alternative to Title VII."  *Karthauser v. Columbia 9-1-1 Commc'ns Dist.,* 647 F.

Supp. 3d 992, 1023 (D. Or. 2022).  "The Equal Protection Clause of the Fourteenth Amendment

protects public employees from race discrimination and retaliation for complaining about race

discrimination. *See Vega v. Hempstead Union Free Sch. Dist*, 801 F.3d 72, 82 (2d Cir. 2015).

Public employees may bring discrimination and retaliation claims under 42 U.S.C. § 1983

---

[1] Since the decision of the Second Circuit in *Vega v. Hempstead Union Free Sch. Dist*, 801 F.3d 72, 80 (2d Cir. 2015) ("Accordingly, we hold that a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment. Hence, the district court erred in dismissing Vega's § 1983 retaliation claim against Artiles on the ground that no such claim was available under § 1983"), there have been numerous rulings rendered by the district courts within the Second Circuit, which have found that *Vega* clearly established the right to be free from retaliation under the Equal Protection Clause.  It is certainly peculiar and troublesome that the defendants failed to mention, let alone address the prevailing authority of *Vega,* and the ensuing case law from the district courts addressing this issue.

against 'responsible persons acting under color of state law.' *Id.* at 87." *Ramos v. City of Hartford*, No. 3:21-CV-01343 (VAB), 2024 WL 3742752, at *4–5 (D. Conn. Aug. 9, 2024). "In *Vega v. Hempstead Union Free School District*, 801 F.3d at 80, the Second Circuit held that 'retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983.'" *Suarez v. City of New York*, No. 11CV5812WFKVMS, 2019 WL 13273450, at *22–23 (E.D.N.Y. June 10, 2019).

The assertions of the defendants, Prats, Solomon, Morin, Jefferson, Woodard, that (1) "[t]he Plaintiff has failed to plead a plausible race/color discrimination claim," (2) "[t]he Plaintiff has failed to plead a plausible retaliation claim pursuant to § 1981," (3) "[t]he Plaintiff has failed to plead a plausible procedural due process claim," and (4) "[t]here is no cause of action for retaliation in violation of the Equal Protection clause," ignores the long established liberal federal pleading requirements applicable to discrimination complaints and are based on a disingenuous reading of the factual allegations forming the basis of the plaintiff's complaint. "Of course, in this case we are approaching these questions in the context of a motion to dismiss, so the requirements of *Pickering* and *Connick* must be viewed through the lens *of our liberal, undemanding pleading standard*. To survive a motion to dismiss, a complaint must be plausible on its face, meaning that the plaintiff must have pled 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint need not contain detailed factual allegations to meet that standard, but must go beyond mere labels and conclusions, and must 'be enough to raise a right to relief above the speculative level.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Allegations that state 'legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action' are not

entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937." *Brockett v. Effingham Cnty., Illinois*, No. 23-2360, 2024 WL 3982729, at *3 (7th Cir. Aug. 29, 2024) (Emphasis added).

It is also indisputable that "[w]hile Defendant may have a legitimate, nondiscriminatory reason for Plaintiff's treatment, at the motion to dismiss stage, the Court will not consider Defendant's argument. See *Littlejohn*[2], 795 F.3d at 316; *Burgos*[3], 2019 WL 1299461, at *9 (declining to consider purported legitimate, non-retaliatory explanation for adverse employment action because "that is an issue to be decided on summary judgment, not at the motion to dismiss stage" (quoting *Robinson*, 2012 WL 259409, at *6))." *Hunt v. Consol. Edison Co. of New York, Inc.,* No. 18-CV-7262 (MKB), 2021 WL 3492716, at *13 (E.D.N.Y. Aug. 9, 2021).

## II.    *Qualified Immunity*

The factual allegations alleged by the plaintiff demonstrate that she has sufficiently asserted causes of action for race discrimination, unlawful retaliation, and a violation of her due process rights.  Further, since the constitutional right to be free from race discrimination in one's employment, as well as the constitutional right of a tenured public-sector employee to due process of law when being terminated had been clearly established by June 4, 2024, the date of the plaintiff's termination, the defendants, Prats, Solomon, Morin, Jefferson, Woodard, are not shielded from liability based on the defense of qualified immunity.  "[I]t was clearly established in 2012, that due process requires that before being terminated an employee be given notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Miley v. Housing Authority of City of, Bridgeport*, 926 F.Supp.2d

---

[2] *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015).
[3] *Burgos v. City of New York*, No. 18-CV-1150 (JPO), 2019 WL 1299461, at *1 (S.D.N.Y. Mar. 21, 2019)

420, 435 (2013).  Likewise, "the right alleged by the Plaintiffs—to be free from racial [ ]

discrimination—is clearly defined and supported by decisional law of the Supreme Court and the

Second Circuit. To the extent the Defendants decided not to promote one or more of the Plaintiffs

because of their age or race, it would not have been objectively reasonable for them to believe

that they were not violating the law by doing so…"  *Winter v. State of Connecticut*, No. 3:14-CV-

1139 (VLB), 2016 WL 6122926, at *8 (D. Conn. Oct. 19, 2016) (Internal quotation and citation

omitted).  See also, *Alvarez v. Velardo*, No. 3:17-CV-1967(AWT), 2018 WL 5993923, at *1 (D.

Conn. Sept. 11, 2018).  Should the plaintiff prove that she was the victim of race discrimination

when the defendants disciplined her, it is implausible that the defendants would contend that they

would be immune from suit under the doctrine of qualified immunity.  The Second Circuit

expressed its skepticism when addressing a similar claim in the case of *Vill. of Freeport v.*

*Barrella*, 814 F.3d 594, 609–10 (2d Cir. 2016) where it asserted, "[f]inally, we reject Hardwick's

qualified-immunity argument, which contends—rather incredibly—that it was 'objectively

reasonable' for him to believe in 2010 that federal law did not forbid discrimination based on

Hispanic ethnicity."

Regarding the plaintiff's Fourteenth Amendment Equal Protection Clause retaliation claim,

the Second Circuit, in 2015, decided *Vega v. Hempstead Union Free Sch. Dist, 801 F.3d at 82*, in

which it explicitly recognized a cause of action under Title 42 U.S.C. § 1983, for unlawful

retaliation in violation of the Equal Protection Clause.  "In 2015, however, the Second Circuit

decided *Vega*, a case involving § 1983 claims of discrimination on the basis of race and age, and

observed that 'the elements of a retaliation claim based on an equal protection violation under §

1983 mirror those under Title VII.' *Vega*, 801 F.3d at 91. Part of the circuit's rationale in *Vega*

was to clear up the 'considerable confusion surrounding the viability of retaliation claims under §

1983.' *Id.* at 80–81. Even still, the post-*Vega* caselaw addressing standalone age-based retaliation claims under the Equal Protection Clause is scant. *See, e.g.*, *Fierro v. City of New York*, No. 20-CV-9966 (GHW), 2022 WL 428264, at *7–8 (S.D.N.Y. Feb. 10, 2022). Many courts have found, however, that for purposes of qualified immunity, 'the right to be free from retaliation under the Equal Protection Clause' became clearly established in 'September 2015 when the Second Circuit decided *Vega*.' *Muller v. City of New York*, No. 13-CV-4689 (NG) (RML), 2020 WL 3985094, at *1 (E.D.N.Y. July 10, 2020); *see also, e.g.*, *Oliver v. New York State Police*, No. 15-CV-444 (BKS) (DJS), 2020 WL 1989180, at *48 (N.D.N.Y. Apr. 27, 2020); *Anderson v. City of New York, Health & Hosp. Corp.*, No. 16-CV-1051 (GBD) (KHP), 2017 WL 9538862, at *16 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, No. 16-CV-1051 (GBD) (KHP), 2017 WL 3251603 (S.D.N.Y. July 31, 2017). *Cf. Liberian Cmty. Ass'n of Connecticut*, 970 F.3d at 186 ('To be sure, 'a case directly on point' is not required 'for a right to be clearly established.' ' (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)))." *Keles v. Davalos*, 642 F. Supp. 3d 339, 371–72 (E.D.N.Y. 2022).  "As defendants note, the law was not clearly established until September 2015 with the Second Circuit's decision in *Vega v. Hempstead Union Free Sch. District*, *supra*, that the Equal Protection Clause protects against a plaintiff being subject to retaliation because of a plaintiff's complaint about unlawful discriminatory activity." *Johnson v. Connecticut Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, No. 3:17-CV-00901 (JAM), 2018 WL 306697, at *7 (D. Conn. Jan. 5, 2018).

## III.     *Background*

The plaintiff is an African American citizen of the United States.  On or about June 3, 2022, the State of Connecticut Public Defender Services Commission appointed the plaintiff to the position of Chief Public Defender.  Pursuant to Connecticut General Statutes § 51-290 (a) and

(d), the plaintiff was appointed to a four (4) year term "and until the appointment and qualification of his successor," and could "not be removed or suspended from office during [her] term except by order of the commission for just cause after due notice and hearing." The defendant, Palmer, who is named in his individual and official capacity, has been at all times relevant to this action the Chairperson of the Connecticut Public Defender Services Commission. The defendants, Prats, Solomon, Morin, Jefferson, Woodard, who are named in their official and individual capacities, have been at all times relevant to this action members of the Connecticut Public Defender Services Commission. The defendants, Palmer, Prats, Solomon, Morin, Jefferson, Woodard are persons within the meaning of Title 42 U.S.C. § 1983. The defendants, Palmer, Prats, Solomon, Morin, Jefferson, Woodard, at all times relevant to this action, acted under color of state law. The State of Connecticut Public Defender Services Commission is an agency of the State of Connecticut created pursuant to Connecticut General Statutes § 51-289, which reads, in part, "[t]here is established a Public Defender Services Commission." The Public Defender Services Commission is a political subdivision of the state of Connecticut.
*Complaint ¶¶ 17-41.*

The plaintiff holds a Juris Doctor degree awarded to her by Quinnipiac University. The plaintiff is licensed to practice law in the State of Connecticut. From on or about 1998 through on or about 2022, the plaintiff served as a public defender in the Connecticut Superior Courts for the Judicial District of New Haven, and the Judicial District of Waterbury. On or about June 3, 2022, the State of Connecticut Public Defender Services Commission appointed the plaintiff to the position of Chief Public Defender. The plaintiff possessed the necessary qualifications for appointment to the position of Chief Public Defender. Pursuant to Connecticut General Statutes § 51-290 (a) and (d), the plaintiff received an appointment to a four (4) year term "and until the

appointment and qualification of [her] successor," and could "not be removed or suspended from office during [her] term except by order of the commission for just cause after due notice and hearing." *Complaint ¶¶ 42-49.*

Since the appointment of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, to the State of Connecticut Public Defender Services Commission, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *acting in concert*, treated the plaintiff in a racially discriminatory manner.  The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, discriminated against the plaintiff when, *acting in concert*, they subjected the plaintiff to adverse disciplinary actions for conduct which her Caucasian predecessors in the position of Chief Public Defender had not likewise been disciplined.  *Complaint ¶¶ 50-51 (Emphasis added).*  When the plaintiff voiced her opposition to the racially discriminatory way the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, had treated her, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, retaliated against her by subjecting her to adverse disciplinary actions.  After the plaintiff voiced her good faith belief that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, had been subjecting her to unlawful race and color discrimination, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *acting in concert*, issued the plaintiff a formal letter of reprimand on October 3, 2023, in which the plaintiff's opposition to being subjected to race discrimination was specifically cited as a reason for her discipline. *Complaint ¶ 53.*  Seven out of the ten reasons advanced by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, for issuing the plaintiff a written reprimand on October 3, 2023, dealt with the plaintiff's opposition to the race and color discrimination to which she had been subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard.  The contents of the written reprimand that the

defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, had caused the Connecticut Public Defender Services Commission to issue to the plaintiff specifies that the plaintiff's assertions that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, had subjected her to race and color discrimination, in micromanaging her job performance and in holding her to different performance standards than her Caucasian predecessors were determinative factors in their decision to discipline  the plaintiff.    The contents of the written reprimand make it clear that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *acting in concert*, had punished the plaintiff because she openly opposed the racially discriminatory conduct of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard.  *Complaint ¶¶ 54-56.*  When the discriminatory conduct of the defendants, Prats, Solomon, Morin, Jefferson, Woodard, continued, resulting in the plaintiff persisting in voicing her opposition to such conduct, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *acting in concert*, had the Connecticut Public Defender Services Commission suspend the plaintiff from the position of Chief Public Defender on February 9, 2024.  *Complaint ¶ 57.*

The plaintiff had a good faith belief that she had been subjected to race and color discrimination by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, when she voiced her opposition to being treated in a racially discriminatory manner by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard.  *Complaint ¶ 58.*  The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, failed to investigate the plaintiff's accusations of race and color discrimination, instead the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *verbally chastised, ridiculed, and disciplined the plaintiff for raising such complaints.  Complaint ¶ 59 (Emphasis added).*  The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, viewed the plaintiff's complaints of race and color

discrimination as acts of workplace misconduct for which she was subjected to various forms of discipline, *including being issued a written reprimand, suspension and removal from office, by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard.  Complaint ¶ 60 (Emphasis added).*  Hiding behind the veil of the Connecticut Public Defender Services Commission, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *publicly castigated and rebuked the plaintiff for voicing her good faith belief that she was being treated in a racially discriminatory manner.  Complaint ¶ 61 (Emphasis added).* Other than asserting that "a review of the relevant facts" did not support the plaintiff's accusations, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, failed to conduct an objective investigation into the plaintiff's claims of race discrimination.  Instead of responding in a constructive manner to the plaintiff's assertions, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, *expressed their anger over the likelihood that the plaintiff's claims of discrimination "were subject to public disclosure."  Complaint ¶¶ 62-63 (Emphasis added).* Unlike the investigation that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, subjected the plaintiff, the defendants never commissioned a similar investigation relating to the plaintiff's claims of race and color discrimination.  *Complaint ¶ 64.*

The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, hid behind the excuse of "overarching authority of the Commission," to justify their officious behavior when it came to disputing the everyday decisions of the plaintiff in the operation of the Division of Public Defender Services.  The "overarching authority" of the Connecticut Public Defender Services Commission, as it relates treatment of the plaintiff by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, is a fiction they invented to justify the racially discriminatory behavior to which they subjected the plaintiff.  The relevant general statutes do

not bestow on the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, "overarching authority," when it comes to the everyday functions and operations of the Division of Public Defender Services.  Connecticut General Statutes § 51-291 (1) states, "[t]he Chief Public Defender shall (a) Direct and supervise the work of the Deputy Chief Public Defender and all public defenders, assistant public defenders, deputy assistant public defenders and other personnel appointed pursuant to this chapter; and the Chief Public Defender and the Deputy Chief Public Defender may participate in the trial of criminal actions."  Connecticut General Statutes § 51-291 (3) provides, "[t]he Chief Public Defender, *with the approval of the commission*, establish such divisions, facilities and offices and select such professional, technical and other personnel, including investigators, *as the Chief Public Defender deems reasonably necessary* for the efficient operation and discharge of the duties of public defender services under this chapter, subject to the personnel policies and compensation plan established by the commission."  *Complaint ¶¶ 68-69.*  The language of Connecticut General Statutes § 51-293 (b) limits the "overarching" authority of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, as follows, "[t]he commission shall appoint, *on recommendation of the Chief Public Defender*, and fix the compensation of, all other personnel necessary to the operation of the Division of Public Defender Services."  *Complaint ¶ 70 (Emphasis in the original)*.  The instructions summarily issued by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, to the plaintiff, including the appointment of a human resources director, and the staffing of the complex litigation unit, interfered with the plaintiff's statutory authority concerning the hiring of personnel, and the direction and supervision of all public defenders and other personnel hired pursuant to Chapter 887 of the Connecticut General Statutes.  The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, did not possess the

11

unlimited authority to appoint personnel, and the plaintiff had not been insubordinate in resisting their encroachment on her statutory authority. The reasons advanced by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, for disciplining the plaintiff under the false veil of "overarching statutory authority," are pretexts to justify their racially discriminatory treatment of the plaintiff, including the removal of the plaintiff from the position of Chief Public Defender. *Complaint ¶¶ 71-73.*

The investigation of the plaintiff's management of the Division of Public Defender Services by a law firm, hired and paid for by the Connecticut Public Defender Services Commission, acknowledged that the plaintiff's assertion that she was the subject of race and color discrimination had legitimacy. The report found that "[t]his is a difficult area to evaluate because race could be an implicit factor in at least some witnesses' reactions to Ms. Bowden-Lewis's priorities and actions as Chief; as one witness explained, former Chiefs also declined to grant Department heads' requests for additional attorneys, but they did not complain to the Commission about those Chiefs, while they did complain about Ms. Bowden-Lewis (insinuating that it is because Ms. Bowden-Lewis is black)…" *Complaint ¶75.*

On March 5, 2024, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, caused a letter entitled "Notice of Charges and Hearing," to be served on the plaintiff in which they expanded on the reasons for which the plaintiff had originally been suspended from her position. The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, charged the plaintiff with sixteen violations that it claimed constituted just cause for the plaintiff's removal from the position of Chief Public Defender. The charges brought against the plaintiff specifically cited the protected activity of the plaintiff in opposing the discriminatory conduct to which the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, subjected her.

The statement of charges explicitly asserted that the plaintiff was being charged with "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission." The content of the charge asserts, "Following your appointment as Chief Public Defender by the prior Commission in 2022, your attorney wrote to that Commission on your behalf on March 6, 2023, expressing your concern that certain Commission decisions with which you did not agree were a 'pretext for discrimination.' Thereafter, in an email from you to the current Chairperson on August 17, 2023, you indicated that the Chairperson had conducted himself in a racially discriminatory manner toward you. Although you subsequently denied that you were alleging such conduct by the Chairperson, it is clear from your email's plain language, as well as from a letter your attorney sent to the Commission on December 19, 2023, expressly reiterating your claim of discrimination against the Chairperson, that you were, in fact, claiming such discrimination. In that December 19, 2023, letter, your attorney also accused the Commission of 'continued acts of discrimination and retaliation against [you].' The letter further alleged that the Commission's actions 'demonstrate an apparent disregard for [your] right to oppose discrimination, free from retaliation,' and asserted that the Letter of Reprimand you received from the Commission on October 3, 2023, was issued in retaliation for your complaints of racial discrimination against the Commission. Subsequently, in an email you sent to the Chairperson on January 18, 2024, you stated that '[the Chairperson's] continued assertions that [your] complaints about discrimination and retaliation are ''unfounded' and 'baseless' demonstrate [the Chairperson's] own animus and bias.' Again, on January 23, 2024, in a third letter sent to the Commission on your behalf, your attorney accused the Commission of 'continued retaliation and discrimination against [you],' stating, as well, that, '[s]adly, the Commission continues to retaliate and discriminate against [you], inflict damage on [your] reputation and [your] career,

and undermine [your] ability to effectively carry out [your] mission.' Even more recently, on February 9, 2024, in your response to questions posed to you by the Chairperson concerning your accessing of emails of certain Division members without their knowledge, you expressed your belief 'that the Chair's response and handling of this…issue represents additional discrimination and retaliation against me.'" *Complaint ¶¶ 76-82.* Instead of investigating the plaintiff's claims of discrimination, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, simply dismissed the claims charged her with workplace misconduct. *Complaint ¶¶ 83-84.*

On April 12, 2024, Palmer informed the plaintiff's counsel by letter that "I wish to reiterate that the April 16, 2024, hearing is Ms. Bowden-Lewis's opportunity to be heard and fully respond, personally or through counsel, to the sixteen Charges listed in my March 5, 2024, letter. Connecticut General Statutes § 51-290 (d) does not contemplate any further administrative review of the matter, and the Commission urges Chief Public Defender Bowden-Lewis to present any and all evidence that she believes the Commission should consider before reaching its decision." (Emphasis added). Plaintiff's counsel responded to counsel for Palmer in writing on April 15, 2024, reminding Palmer's counsel that "[a]s I have previously communicated to you, I believe the United States Supreme Court, the Connecticut Supreme Court and the United States Court of Appeals for the Second Circuit have rejected the position adopted by [chairperson] Justice Palmer, and require that Bowden-Lewis be accorded the full due process protections of the fourteenth amendment and article first, § 8 of the Connecticut constitution, including a pre-termination hearing and, if necessary depending on the commission's action, a post-termination, full trial type hearing before an impartial, neutral adjudicator." *Complaint ¶¶ 87-88.* The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, rejected the plaintiff's

14

counsel's request that they disqualify themselves from acting as decisionmakers at the plaintiff's termination hearing, and instead appoint a neutral adjudicator to decide whether there was just cause to remove the plaintiff. *Complaint ¶ 89.* On June 4, 2024, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, removed the plaintiff from her position. *Complaint ¶ 90.*

One of the reasons advanced by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, for disciplining the plaintiff was her alleged failure to follow their instructions to provide the complex litigation section of the Division of Public Defender Services with an additional public defender. The plaintiff's Caucasian predecessors in the office of Chief Public Defender, as the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, were advised by the firm hired to investigate the plaintiff's conduct, likewise had not provided the complex litigation section with an additional public defender for which they were not disciplined. In addition, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, disciplined the plaintiff supposedly because she resisted the appointment of a less qualified Caucasian candidate as Human Resources Director for the Division of Public Defender Services, in place of a more qualified African American candidate. In so doing, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, opposed the plaintiff's efforts to diversify the management level employees of the Division of Public Defender Services. Also, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard punished the plaintiff because she allegedly failed to comply with the provisions of Connecticut General Statutes § 51-291(13) regarding the Connecticut Public Defender Services Commission's budgetary process. Connecticut General Statutes § 51-291(13) provides that the Chief Public Defender shall "[p]repare and submit to the commission estimates of appropriations necessary for the

maintenance and operation of public defender services, and make recommendations with respect

thereto; and with the approval of the commission, and after such modification as the commission

directs, submit the budget requests to the Governor." In disciplining the plaintiff for her alleged

failure to submit to the Public Defender Services Commission estimates of appropriations, the

defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, were fully aware that

previous Chief Public Defenders, who were white, did not submit to the Connecticut Public

Defender Services Commission estimates of appropriations in violation of Connecticut General

Statutes § 51-291(13), and, unlike the plaintiff, went undisciplined. *Complaint ¶¶ 91-97.*

Further, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, completely

fabricated a charge, the plaintiff's violation of an illusory right of employee privacy, to terminate

the plaintiff, which they knew to be false. The defendants, Palmer, Prat, Solomon, Morin,

Jefferson, and Woodard, manufactured a legal right, unrecognized in statutory and/or case law,

to justify the termination of the plaintiff's employment, when they asserted, without legal

foundation, that although "Mr. ***** did not have a reasonable expectation of privacy in his

emails, he did reasonably expect that his emails would not be searched surreptitiously unless

there was a valid reason for doing so." The policies of the state of Connecticut, of which the

defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, were fully aware, refute the

existence of such a "reasonable expectation" on the part of employees of the Division of Public

Defender Services in emails sent or received through the state's email system. Division of

Public Defender Services Policy No. 605 provides, "All activities involving the use of State

systems are not personal or private; therefore, *users should have no expectation of privacy in the*

*use of these resources*. Information stored, created, sent or received via State systems is

potentially accessible under the Freedom of Information Act. Pursuant to Public Act 98-142 and

the State of Connecticut's "Electronic Monitoring Notice" *the Division of Public Defender Services reserves the right to monitor and/or log all activities without notice*. This includes but is not limited to correspondence via e-mail and facsimile." (Emphasis in the original). Policy 605 further provides that "[t]he assignment of equipment or the ability to access various systems does not confer, implicitly or explicitly, any expectation of privacy with respect to the issue of such equipment or systems to anyone acting as an agent of the Division or employed by the Division regardless of the type of position (permanent, temporary, per-diem or contractual). *The Division reserves the right to access at any time and for any reason all equipment and systems without the specific knowledge and permission of such individuals. Information Technology Department employees who access systems during the course of their duties will adhere to confidentiality standards*." (Emphasis in the original). *Complaint ¶¶ 99-102.* As regards the inspection by the plaintiff of emails of various subordinate employees, the plaintiff acted in full compliance with the policies of the Division of Public Defender Services. *Complaint ¶ 103.*

The decision of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, to remove the plaintiff from the position of Chief Public Defender, was reached in an illegal executive session in violation of the Connecticut Freedom of Information Act, where there were no minutes taken or proceedings recorded. *Complaint ¶ 106.* By recessing to an executive session, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, were able to conceal from the public their discussions concerning the real reasons for the removal of the plaintiff from her position. Nevertheless, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, revealed their implicit bias by insisting that the plaintiff acknowledge her subservience to them. They instructed the plaintiff to "acknowledge the overarching statutory authority of the Commission in regard to the functions and operation of the Division

*and comply with all directives and requests of the Commission*." (Emphasis added in the original).  The relevant general statutes do not provide for the "overarching authority" in the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, when it comes to the everyday functions and operations of the Division of Public Defender Services, but, instead, places such authority in the Chief Public Defender.  The applicable general statutes fail to authorize the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, to issue "directives and requests" to the plaintiff beyond their statutory authority.  The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, selectively relied on the purported findings of the report prepared by a law firm, hired, and paid for by the Connecticut Public Defender Services Commission, but completely disregarded the findings that entirely absolved the plaintiff of unlawful conduct.  *Complaint ¶¶ 107-109.*

## IV.   Discussion

### A.  Legal Standard

"When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  Although a complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)(on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation').  'Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' '

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).  'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact).' *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, the plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.' *Id*. at 570, 127 S.Ct. 1955.  'The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' ' *Mytych v. May Dept. Store Co.,* 34 F.Supp.2d 130, 131 (D. Conn. 1999), *quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). 'The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims.' *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D. Conn. 1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss for failure to state a claim, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.' *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)."  *Alvarez v. Velardo*, No. 3:17-CV-1967(AWT), 2018 WL 5993923, at *1 (D. Conn. Sept. 11, 2018).  "Although 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint,' *id.* at 563, and a plaintiff must allege 'only enough facts to state a claim to relief that is plausible on its face,' [*Twombly, 550 U.S.] at* 570, if a plaintiff has not 'nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed,' *id*.; *see also Iqbal*, 556 U.S. at 679 ('Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' ' (citation omitted in the original) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ('Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.').  '[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint,' *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and 'draw[ ] all reasonable inferences in favor of the plaintiff,' *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, 'when ruling on a Rule 12(b)(6) motion to dismiss,' district courts are directed to confine their consideration to 'the complaint in its entirety, ... documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.' *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted in the original); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same)." *DONOVAN ROYALL, Plaintiff, v. CITY OF BEACON, et al., Defendants. Additional Party Names: Bd. of Educ. of Beacon City Sch. Dist., Brian Archer, Civ. Serv. Emps. Ass'n, Emilio Giordano, Jessica Verdile, Jessie Morrill, Nicholas Miller,* No. 24-CV-3 (KMK), 2024 WL 4266546, at *6–7 (S.D.N.Y. Sept. 23, 2024).

### B.  *Title 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 reads as follows,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

"Section 1983 imposes liability on any 'person who, under color of any statute, ordinance, regulation, custom or usage, of any State' subjects another to 'the deprivation of any rights, privileges, or immunities secured by the Constitution or laws.' 42 U.S.C. § 1983. Section 1983 does not actually confer any rights but simply creates a 'species of tort liability' for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Under § 1983, the Court's 'threshold inquiry' is "to identify the specific constitutional right' at issue and then apply the relevant elements and rules of an action to vindicate the right. *Manuel*, 137 S. Ct. at 916 (quotation omitted in the original).  "Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes…Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983. But the initial inquiry—determining whether a statute confers any right at all—is no different from the initial inquiry in an implied right of action case, the express purpose of which is to determine whether or not a statute 'confer[s] rights on a particular class of persons.' *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981). This makes obvious sense, since § 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States. '[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against

anything.' *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617, 99 S.Ct. 1905,

60 L.Ed.2d 508 (1979)."   *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S. Ct. 2268, 2276,

153 L. Ed. 2d 309 (2002) (Footnote omitted).

### C.  *Race Discrimination in Violation of Title 42 U.S.C. § 1983*

The factual allegations asserted by the plaintiff demonstrate that she has satisfied the

"plausible claim" standard of *Ashcroft v. Iqbal*, 550 U.S. at 570 in asserting causes of action of

race discrimination pursuant to Title 42 U.S.C. § 1983[4] for violations of the Equal Protection

Clause of the Fourteenth Amendment and Title 42 U.S.C. § 1981.  The plaintiff's complaint has

sufficient fact-based assertions that support a claim that but for the plaintiff's race she would not

have been disciplined and removed from her position.  Underlying the defendants' argument that

the plaintiff's complaint does not set forth a plausible race discrimination claim is the contention

that the plaintiff has failed to allege "any facts that, taken as true, demonstrate that any of the six

Defendants treated a similarly situated comparator differently from the Plaintiff. Indeed – the

Plaintiff's 702 paragraph Complaint fails to identify any individuals to whom the Plaintiff

compares herself."  The defendants' reliance on the decision of the Second Circuit in *Hu v. City*

*of New York*, 927 F.3d 81, 91 (2d Cir. 2019) to support their motion to dismiss is misplaced.  In

the present case, the plaintiff's factual allegations exceed those which were found by the court in

*Hu* to plausibly plead an Equal Protection Clause race discrimination cause of action.  "The

plaintiffs in this case have satisfied the standard of plausibility by alleging differential treatment

---

[4] "Adams would hold each Defendant liable under 42 U.S.C. § 1983 for the violation of his Fourteenth Amendment
equal protection rights. Section 1983 imposes liability on any 'person who, under color of any statute, ordinance,
regulation, custom or usage, of any State' subjects another to 'the deprivation of any rights, privileges, or immunities
secured by the Constitution or laws.' 42 U.S.C. § 1983. Section 1983 does not actually confer any rights but simply
creates a 'species of tort liability' for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of
Joliet, Ill.*, 137 S. Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976))."  *Adams v. Obion
Cnty., Tennessee,* No. 1:19-CV-1121-STA-DKV, 2020 WL 3036883, at *4 (W.D. Tenn. June 5, 2020).

by the same defendant (Burkart) for the same conduct (having a pool of standing water) at the

same jobsite (the 34th Avenue Jobsite). While these allegations are admittedly few in number,

they nonetheless allow us to plausibly infer 'a reasonably close resemblance' between the

plaintiffs and the white workers. Discovery in this case may ultimately confirm the District

Court's suspicions that water depth, the existence of other building code violations, the

outstanding violation for the same condition, or any number of on-site characteristics render the

resemblance between the plaintiffs and the white workers less than 'reasonably close.' *Graham*,

230 F.3d at 40. At this early stage in the litigation, however, the plaintiffs' failure to plead such

fact-specific details should not bar their *LeClair* claims."  *Hu v. City of New York*, 927 F.3d 81,

97 (2d Cir. 2019).  As in *Hu,* it is not fatal to the plaintiff's cause of action that she did not

specifically identify her predecessors by name.  It is sufficient that she alleged that she was being

punished more harshly by the six defendants than her Caucasian predecessors had been treated

for the same conduct.   When she and her counsel informed the six defendants of this disparity in

treatment, they simply ignored the plaintiff's complaints.  Even after the defendants, Palmer,

Prat, Solomon, Morin, Jefferson, and Woodard, were cautioned by the plaintiff and her counsel

that the standards to which they were judging the plaintiff that had not been previously applied to

the conduct of her predecessors, they persisted in their behavior, suspending the plaintiff and

subsequently removing her from her position for conduct of which they had been informed was

dissimilar to the treatment of the plaintiff's predecessors, who had not been similarly disciplined.

"Indeed, a complaint need not put 'the moving [d]efendants on notice of who [the allegedly

similarly situated] officers are," ... [it need] only contain enough factual allegations to make a

claim plausible.' *Sutter,* 2021 WL 930459, at *22."  *Kirkland-Hudson v. Mount Vernon City Sch.*

*Dist.,* 665 F. Supp. 3d 412, 455 (S.D.N.Y. 2023).

The defendants' assertion that "the Plaintiff's Equal Protection Clause claim of race discrimination must be based on selective enforcement alone[5]," is an inaccurate interpretation of the legal principles governing an Equal Protection claim.  "To survive a motion to dismiss, however, the plaintiffs' Amended Complaint 'need not contain 'detailed factual allegations[.]' ' *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). While the plaintiffs must plead factual allegations that 'raise a right to relief above the speculative level,' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *Twombly* and *Iqbal* '*do not require heightened fact pleading of specifics*, but only enough facts to state a claim to relief that is plausible on its face.' *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). So long as a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely,' *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation marks omitted)."  *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019).  "When considering the viability of claims based upon Title VII within the context of a Rule 12(b)(6) motion, the Second Circuit recently clarified that 'the facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent.' *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The Second Circuit's decision in *Littlejohn* also clarified that: (1) the

---

[5] In Exhibit 1 of the plaintiff's Complaint, plaintiff's attorney asserted that "[i]n March of 2023, this office wrote to the Commission to address the Chief Public Defender's concerns about discrimination. Then, in August of 2023, the Chief Public Defender expressed questions and concerns to the Commission's current Chairman *regarding the appearances and implications of his actions that accorded heightened status and trust to information that he sought from a white male subordinate employee of the Chief Public Defender instead of the Chief Public Defender herself,* or instead of another employee who had more responsibility for the issue and who is an Asian male." Exhibit 1 at p. 2 (Emphasis added).

general 'plausibility' pleading requirement enumerated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) 'applies to Title VII complaints of employment discrimination; and (2) 'a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973) ].' *Littlejohn*, 795 F.3d at 310; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). However, *Littlejohn* left open two questions: (1) 'what a plaintiff must allege to meet this minimal burden[;]' and (2) 'what 'plausibility' means in the context of employment discrimination claims.' *Vega*, 801 F.3d at 85-86. In *Vega*, the Second Circuit answered both of these questions. As to the first question, the Second Circuit stated that to defeat a motion to dismiss or a motion for judgment on the pleadings in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision. *Id.* at 87; *Pothen v. Stony Brook Univ.*, No. 13CV6170, 2016 WL 5716842, at *5 (E.D.N.Y. Sept. 30, 2016). With this standard in mind, the court next defined the contours of what constitutes 'plausibility' in the employment discrimination context, pointing out that [a] plaintiff may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was a pretext to cover-up discrimination[6], ... or by otherwise creating a *'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination[.]* At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by

---

[6] The plaintiff has alleged facts that, if proven, would show that the defendants, having backed away from an ultimate finding of wrongdoing on the part of the plaintiff in opposing their discriminatory conduct, conjured up a charge, unrecognized in statutory and/or case law, to justify the termination of the plaintiff's employment, when they asserted, without legal foundation, that although "Mr. ***** did not have a reasonable expectation of privacy in his emails, he did reasonably expect that his emails would not be searched surreptitiously unless there was a valid reason for doing so." *Complaint ¶¶ 690-696.*

alleging facts that directly show discrimination or facts that indirectly show discrimination by

giving rise to a plausible inference of discrimination." *Guity v. Uniondale Union Free Sch. Dist.*,

No. CV155693SJFAKT, 2017 WL 9485647, at *13–14 (E.D.N.Y. Feb. 23, 2017), *report and*

*recommendation adopted*, No. 15CV5693SJFAKT, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017)

(Emphasis added). " '[A]n inference of discriminatory motivation may be supported directly,

such as by statements that an adverse employment action was related to plaintiff's protected

class, ... or indirectly by an allegation that plaintiff was treated different from and less favorably

than similarly situated peers.' *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-

10923, 2022 WL 845770, at *7 (S.D.N.Y. Mar. 22, 2022) (quoting *Roache v. Long Island R.R.*,

487 F. Supp. 3d 154, 172 (E.D.N.Y. 2020)); *see also Vega*, 801 F.3d at 87 ('A plaintiff can meet

that burden through direct evidence of intent to discriminate, or by indirectly showing

circumstances giving rise to an inference of discrimination.' (citations omitted)); *Detouche v.*

*JTR Transp. Corp.*, No. 17-CV-7719, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020) ('The

necessary inference may be derived from a variety of circumstances, including the employer's

criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments

about others in the employee's protected group; or the more favorable treatment of employees

not in the protected group[.]' (quotation marks omitted)). Alternatively, '[the] plaintiff also may

create *a 'mosaic' of intentional discrimination* by identifying 'bits and pieces of evidence' that

together give rise to an inference of discrimination.' *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp.

3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87). 'Clearing this low pleading

threshold 'entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the

defendant furnishes its asserted reasons for its action against the plaintiff,' ' *Roache,* 487 F. Supp.

3d at 172 (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016)), 'the evaluation of

which is more appropriately considered at summary judgment or at trial,' *id.* (citing *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019))." *DONOVAN ROYALL, Plaintiff, v. CITY OF BEACON, et al., Defendants. Additional Party Names: Bd. of Educ. of Beacon City Sch. Dist., Brian Archer, Civ. Serv. Emps. Ass'n, Emilio Giordano, Jessica Verdile, Jessie Morrill, Nicholas Miller,* No. 24-CV-3 (KMK), 2024 WL 4266546, at *15 (S.D.N.Y. Sept. 23, 2024) (Emphasis added).  " 'We have repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.' *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997), and *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ('A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue.')). Indeed, as we have recognized, ' 'clever men may easily conceal their motivations.' ' *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Robinson v. 12 Lofts Realty, Inc*., 610 F.2d 1032, 1043 (2d Cir. 1979)). Due to the ' 'elusive' nature of intentional discrimination,' *id.* (citing *Texas Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.8, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), plaintiffs must often 'rely on 'bits and pieces' of information to support an inference of discrimination,' ' *id*. (citing Ga*llagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). Because of the likelihood that 'direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.' ' *Schwapp*, 118 F.3d at 110 (quoting *Gallo*, 22 F.3d at 1224). The resulting *'mosaic of intentional discrimination,'* *Vega*, 801 F.3d at 86 (internal quotation marks omitted), may be sufficient to

show discrimination. Nonetheless, even in the discrimination context, a plaintiff must still present more than conclusory allegations to survive a motion for summary judgment. *See Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 92 (2d Cir. 1996)." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258–59 (2d Cir. 2023) (Emphasis added). "Because discrimination claims implicate an employer's usually unstated intent and state of mind, *see Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), rarely is there 'direct, smoking gun, evidence of discrimination,' *Richards v. N.Y.C. Bd. of Educ.,* 668 F.Supp. 259, 265 (S.D.N.Y.1987), *aff'd,* 842 F.2d 1288 (2d Cir.1988). Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, *i.e.,* a mosaic of intentional discrimination. *Gallagher v. Delaney,* 139 F.3d 338, 342 (2d Cir.1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Again, as we made clear in *Littlejohn,* at the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.' 795 F.3d at 311, 2015 WL 4604250, at *8. Finally, courts must remember that '[t]he plausibility standard is not akin to a 'probability requirement.' ' *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *accord Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 ('Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage....'); *Littlejohn,* 795 F.3d at 310, 2015 WL 4604250, at *7. On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.,* whether plaintiffs allege enough to 'nudge[ ] their claims across the line from conceivable to plausible.' *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *see Iqbal,* 556 U.S. at 678–80, 129 S.Ct. 1937…As we have long recognized, the ' 'ultimate issue' in an employment discrimination case is whether

28

the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.,* a discriminatory reason.' *Stratton v. Dep't for the Aging for City of N.Y.,* 132 F.3d 869, 878 (2d Cir.1997) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 119 (2d Cir.1997))…At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination. *See Littlejohn,* 795 F.3d at 310, 2015 WL 4604250, at *7 (requiring facts 'suggesting an inference of discriminatory motivation')." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 86–87 (2d Cir. 2015).

As alleged by the plaintiff, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, subjected her to the adverse employment actions of a written reprimand, suspension, and removal from the position of Chief Public Defender knowing full well that her Caucasian predecessors in the Chief Public Defender position had not been held to the same standard, going unpunished for the same conduct. In particular, the plaintiff was disciplined for not assigning another attorney to the complex litigation division, even after the investigation of the plaintiff that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, had initiated uncovered evidence of discriminatory bias in that similar requests had been refused by the plaintiff's white predecessors, without disciplinary consequences. The defendants also took the unheard-of action of punishing the plaintiff for failing to submit for approval estimates of appropriations necessary for the maintenance and operation of the Public Defender Services Division, when they had been specifically informed that the plaintiff had simply been following the past precedent of her Caucasian predecessors, who likewise had not submitted appropriation

estimates to the Public Defender Services Commission and had not been disciplined. Additionally, although possessing the statutory authority to appoint a Human Resources Director with the approval of the Public Defender Services Commission, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, refused to approve the candidate, a qualified African American female, selected by the plaintiff, but instead unilaterally, without statutory authority, appointed a less qualified white candidate. When the plaintiff objected to this officious behavior of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, they included her opposition to their overreach as a reason for removing her from her position. When the plaintiff complained, individually and through her attorney, about the discriminatory treatment to which she was being subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, instead of conducting their own investigation or initiating an independent investigation of her complaints, they resorted to criticism, ridicule, threats, and the ultimate discipline of removal from the position of Chief Public Defender, in responding to the plaintiff's complaints, even after being warned such behavior violated the plaintiff's civil rights.

Although the plaintiff does not assert an independent cause of action based on the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, failure to investigate her complaints of race discrimination, the defendant's abject refusal to investigate her complaints is probative of the racial animus of these defendants. "The Court has reviewed the proposed Third Amended Complaint that is attached to Plaintiff's motion for leave to amend, which this Court has already granted. "[T]he factual allegations about KSU's failure to investigate Plaintiff's complaint may be relevant to his surviving Title VII claims, and that the equal protection claim may proceed." *Fattaey v. Kansas State Univ.,* No. 15-9314-JAR-KGG, 2017 WL 2501066, at *3 (D. Kan. June 9, 2017). "Once an employer has knowledge of a co-worker's harassing conduct, 'the law

imposes . . . a 'duty to take reasonable steps to eliminate it." *Torres,* 116 F.3d at 636. Though the reasonableness of the employer's response will necessarily vary based on the underlying allegations of harassment, at a minimum *an employer should promptly investigate the allegations and take effective steps to ensure that the conduct does not recur*. Cf. *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 [ 58 FEP Cases 310] (2d Cir. 1992)…" *P.F. v. Delta Air Lines, Inc.,* No. 99 CV 4127, 2000 WL 1034623, at *9 (E.D.N.Y. June 20, 2000) (Emphasis added).   "The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory [intent]." *Id.* at 311[7]

### D.  Unlawful Retaliation in Violation of Title 42 U.S.C. § 1983

As discussed in the "*Introduction*" section of this memorandum, the proposition advanced by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, that the law does not recognize a cause of action for unlawful retaliation under the Equal Protection Clause of the Fourteenth Amendment is clearly erroneous in view of the decision of the Second Circuit in *Vega v. Hempstead Union Free Sch. Dist*, 801 F.3d 72 (2d Cir. 2015).  "Accordingly, we hold that a state employee may bring a retaliation claim under § 1983 against a supervisor who, acting under color of law, retaliates against him for opposing discrimination in the terms of his employment. Hence, the district court erred in dismissing Vega's § 1983 retaliation claim against Artiles on the ground that no such claim was available under § 1983." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 82 (2d Cir. 2015).  "Retaliation claims under § 1981, § 1983, and the NYSHRL[8] are subject to the same standard...*see also Vega*, 801 F.3d at 91 ("Accordingly, we

---

[7] *Littlejohn*, 795 F.3d at 311.
[8] The NYSHRL is not a subject of this instant case.

hold that for a retaliation claim under § 1983 to survive a ... a motion to dismiss, the plaintiff

must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took

adverse employment action against him, (3) because he complained of or otherwise opposed

discrimination.")…; The Court therefore evaluates the substance of each of Plaintiff's retaliation

claims—whether under Title VII, the NYSHRL, or § 1981 and § 1983—congruently. *Kirkland-*

*Hudson v. Mount Vernon City Sch. Dist.,* 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023).

    In moving to dismiss the plaintiff's cause of action for unlawful retaliation, the defendants,

Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, distort the factual allegations asserted by

the plaintiff in her court complaint.  They assert "[t]he sum and substance of the Plaintiff's §

1981 retaliation claim is that she, at some unidentified point in time, opposed discrimination in

some unidentified way, and that she also suffered three adverse actions – a written reprimand,

paid administrative leave, and the removal from her position – at some point after the vague,

undefined protected activity."  Even a cursory review of the plaintiff's complaint demonstrates

the inaccurate characterization made by the defendants, Palmer, Prat, Solomon, Morin, Jefferson,

and Woodard, of the plaintiff's factual allegations.  The plaintiff explicitly identifies the points in

time when she voiced her opposition to the discrimination to which the defendants had subjected

her.  She also specifically alleges the manner in which she opposed the discrimination to which

she had been subjected and states the point at which she was made the subject of the retaliatory

acts of the defendants.    In ¶ 76 of the plaintiff's complaint, she alleges "[o]n March 5, 2024, the

defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, caused a letter entitled

"Notice of Charges and Hearing," to be served on the plaintiff in which they disingenuously

expanded on the reasons for which the plaintiff had originally been suspended from her position,

to justify the racially discriminatory removal of the plaintiff from the position of Chief Public

Defender." In ¶ 82, the plaintiff asserts that "[t]he content of the charge demonstrates the retaliation to which the plaintiff was subjected the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, where it asserts, "[f]ollowing your appointment as Chief Public Defender by the prior Commission in 2022, your attorney wrote to that Commission on your behalf *on March 6, 2023*, expressing your concern that certain Commission decisions with which you did not agree were a '*pretext for discrimination*.' Thereafter, in an email from you to the current Chairperson *on August 17, 2023*, you indicated that the Chairperson had conducted himself in a racially discriminatory manner toward you. Although you subsequently denied that you were alleging such conduct by the Chairperson, it is clear from your email's plain language, as well as from a letter your attorney sent to the Commission on *December 19, 2023*, expressly reiterating your claim of discrimination against the Chairperson, that you were, in fact, claiming such discrimination. In that *December 19, 2023*, letter, your attorney also accused the Commission of 'continued acts of discrimination and retaliation against [you].' The letter further alleged that the Commission's actions 'demonstrate an apparent disregard for [your] right to oppose discrimination, free from retaliation,' and asserted that the Letter of Reprimand you received from the Commission *on October 3, 2023*, was issued in retaliation for your complaints of racial discrimination against the Commission. Subsequently, in an email you sent to the Chairperson *on January 18, 2024*, you stated that '[the Chairperson's] continued assertions that [your] complaints about discrimination and retaliation are ''unfounded' and 'baseless' demonstrate [the Chairperson's] own animus and bias.' Again, *on January 23, 2024*, in a third letter sent to the Commission on your behalf, your attorney accused the Commission of 'continued retaliation and discrimination against [you],' stating, as well, that, '[s]adly, the Commission continues to retaliate and discriminate against [you], inflict damage on [your]

reputation and [your] career, and undermine [your] ability to effectively carry out [your] mission.' Even more recently, *on February 9, 2024*, in your response to questions posed to you by the Chairperson concerning your accessing of emails of certain Division members without their knowledge, you expressed your belief 'that the Chair's response and handling of this…issue represents additional discrimination and retaliation against me.' " (Emphasis added). As the plaintiff expressed in ¶¶ 79-80 of her Complaint, "[t]he charges brought against the plaintiff specifically cited the protected activity of the plaintiff in opposing the discriminatory conduct to which she was subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, and [t]he statement of charges demonstrates the retaliatory malice of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, in charging the plaintiff with wrongdoing specifically because she complained about being the subject of race and color discrimination." The content of the charges lodged by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, against the plaintiff is proof that the plaintiff's protected activity resulted in her being continuously disciplined, ending in her termination because she would not follow their instructions to silence her opposition to their discriminatory conduct.

The facts cited in the plaintiff's complaint, despite the claim of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, that they are "unidentified," "vague," and undefined," expressly details how and when the plaintiff opposed the discriminatory conduct of the defendants, as follows, a March 6, 2023, letter from her attorney expressing the plaintiff's opposition to the discriminatory treatment to which she had been subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard; an August 17, 2023, email to the defendant, Palmer, again complaining about the discrimination to which she was being subjected; a December 19, 2023, letter from the plaintiff's attorney to the defendant, Palmer,

claiming again that she was the subject of the discriminatory conduct of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard; letters sent to the defendant Palmer on January 18, 2023, from the plaintiff and on January 23, 2024, from the plaintiff's attorney raising opposition to the unabated discrimination to which the plaintiff had been subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard; the plaintiff's response on February 9, 2024, to questions posed to her by the defendant, Palmer, in which she persisted in claiming that she was being subjected to discrimination because of her race by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard.

As stated in her complaint, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, retaliated against the plaintiff on October 3, 2023, by issuing her a formal letter of reprimand, which specifically cited the plaintiff's opposition to the discriminatory conduct of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, as the basis for the retaliatory letter of reprimand. *Complaint ¶53.* The plaintiff further specifies at ¶ 57 of her Complaint that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, continued to retaliate against her when she persisted in her opposition to the racial discrimination to which she was being subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, when they suspended the plaintiff from the position of Chief Public Defender on February 9, 2024, which was on the very same day that she had responded to the questioning from Palmer by persisting in her claim that she was victim of race discrimination and within a matter of a few weeks of the letters sent to Palmer by the plaintiff on January 18, 2024, and her counsel, on January 23, 2024.  The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard's retaliation continued when, on March 5, 2024, they had a "Notice of Charges and Hearing" served on the plaintiff.  The statement of charges explicitly asserted that the plaintiff

was being charged with "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission." By their own admission, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard subjected the plaintiff to adverse actions, including a formal reprimand, a suspension, and formally charging her with "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission."

"Retaliation claims under § 1981, § 1983, and the NYSHRL are subject to the same standard. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the same standard), *aff'd*, 788 F. App'x 779 (2d. Cir. 2019); *see also Vega*, 801 F.3d at 91 ('Accordingly, we hold that for a retaliation claim under § 1983 to survive a ... a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination.'); *Littlejohn*, 795 F.3d at 315 ('Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework.' (footnote omitted in the original)). The Court therefore evaluates the substance of each of Plaintiff's retaliation claims—whether under Title VII, the NYSHRL, or § 1981 and § 1983—congruently. *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023). "For a retaliation claim under § 1983 to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Sutter v. Dibello*, No. 18-CV-817(SJF)(AKT), 2021 WL 930459, at *28 (E.D.N.Y. Mar. 10, 2021) (Internal citation and quotation omitted). The plaintiff has plausibly alleged that the defendants,

Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, acted under the color of law in that they claimed statutory authority as members of the Public Defender Services Commission to discipline and remove the plaintiff from her position as Chief Public Defender. *Connecticut General Statutes § 51-289 et seq.* As to the second element of a retaliation claim, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, took adverse employment actions against the plaintiff, which included a formal reprimand, a suspension, formal charges of wrongdoing, and removal from office. As to the third element, the written reprimand, the suspension and the statement of charges fully acknowledge that the plaintiff was subjected to disciplinary actions because she voiced opposition to the discriminatory conduct of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard. Seven out of the ten reasons advanced by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, for issuing the plaintiff a written reprimand on October 3, 2023, dealt with the plaintiff's opposition to the race and color discrimination to which she had been subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard. The March 5, 2024, statement of charges explicitly alleged that the plaintiff had voiced "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission."

"Moreover, '[t]o adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action. [ ] *But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.*' Duplan[9], 888 F.3d at 625 (Emphasis added); *see also Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. Feb. 29, 2016) (summary order) ('To plead causation, the plaintiff must plausibly plead a connection

---

[9] *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

between the adverse act and her engagement in protected activity.... Moreover, the plaintiff must allege that the retaliation was the 'but-for' cause of the employer's adverse action, *i.e.*, that the adverse action would not have occurred in the absence of the retaliatory motive.') 'Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity.' *Duplan*, 888 F.3d at 625. However, '[a]lthough temporal proximity between protected activity and adverse employment action can support an inference of discriminatory intent, ... the Supreme Court has suggested that the temporal proximity must be 'very close.' ' *Riddle*, 640 F. App'x at 79 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).  In the present case, the plaintiff has established causation not only by the temporal proximity between the plaintiff's protected activities and the adverse employment actions to which she was subjected, but also by direct evidence of the statements contained in the formal reprimand, and the statement of charges.  " 'To establish that she engaged in protected activity, [the plaintiff] need not establish that the conduct she opposed was actually a violation of Title VII [or other unlawful employment practice], but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful....' *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013); *see also Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. Dec. 4, 2018) (summary order), *cert. denied*, ─── U.S. ───, 139 S. Ct. 2757, 204 L. Ed. 2d 1136 (2019) ('To qualify as a protected activity, an employee must have a good faith, reasonable belief that the challenged actions violated the law.') 'The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances.' *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *accord Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14-15

(2d Cir. 2013)." *Sutter v. Dibello*, No. 18-CV-817(SJF)(AKT), 2021 WL 930459, at *28 (E.D.N.Y. Mar. 10, 2021).

The discriminatory treatment, discussed in the *Section 1983 Race Discrimination* section of the plaintiff's memorandum plausibly establishes the reasonableness of the plaintiff's belief that she was voicing opposition to unlawful discriminatory conduct of the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard.  Buttressing the plaintiff's claim that she had a good faith belief that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, had discriminated against her, is the indisputable fact that seven out of the ten reasons relied upon by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, the  for initially reprimanding her focused on her contention that she was being subjected to discrimination based on her race.

Further, charging the plaintiff with workplace misconduct because of her exercise of her constitutionally and statutorily protected rights to oppose discriminatory practices, in and of itself, constitutes unlawful retaliation even though the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, claim not to have ultimately found the plaintiff guilty of the charge. The bringing of the formal charge against the plaintiff, just as the prior issuance of a written reprimand for the same protected activity, constitutes unlawful retaliation in violation of the Fourteenth Amendments to the United States Constitution, Title 42 U.S.C. §§ 1981, and 1983, because such action would deter a reasonable person from complaining in the first instance. "[R]etaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 80 (2d Cir. 2015)…As 'the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII[,]' an "adverse employment action [in a retaliation claim based

on the Equal Protection Clause] is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination[,] ... [and] covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII.' *Id.* at 90–91 (quotation marks and citation omitted in the original). 'Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action[,]' or "that the adverse action would not have occurred in the absence of the retaliatory motive.' *Id.* at 90 (quotation marks and citations omitted)." *Raymond v. City of New York,* 317 F. Supp. 3d 746, 768 (S.D.N.Y. 2018). " 'A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Id. (citation omitted in the original). Though 'the Second Circuit Court of Appeals has declined to draw 'a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action,' ' courts in this Circuit have inferred a causal relationship when three or fewer months have elapsed. *See Lewis v. Roosevelt Island Operating Corp.,* 246 F.Supp.3d 979, 991 (S.D.N.Y. 2017) (quoting *Littlejohn*, 795 F.3d at 319); *see also Day v. City of New York*, 2015 WL 10530081, at *13 (S.D.N.Y. Nov. 30, 2015) (citing Vega, 801 F.3d at 92) ('[T]he Second Circuit has held that an adverse action that occurs within two months or less of a protected activity ... is sufficient to survive a motion to dismiss on the issue of causation.'). Courts in the Second Circuit 'have found a causal connection where there were even longer gaps [between the protected activity and the adverse employment action] but it was plausible that there was no earlier opportunity to retaliate.' *EEOC v. Day & Zimmerman NPS, Inc.,* No. 15-CV-01416-VAB, 2016 WL 1449543, at *4 (D. Conn. Apr. 12, 2016) (internal quotation marks and citation omitted

in the original) (finding that the EEOC plausibly alleged retaliatory conduct under the *Vega* framework in a disability discrimination suit)." *Raymond v. City of New York,* 317 F. Supp. 3d 746, 768 (S.D.N.Y. 2018).  In the present case, there is close temporal proximity between the time the plaintiff voiced her opposition to race discrimination and the adverse employment actions to which she was subjected.

The legal standards applicable to the plaintiff's Equal Protection Clause retaliation cause of action are the same standards that apply to a retaliation claim pursued under Title 42 U.S.C. § 1983 for a violation of Title 42 U.S.C. § 1981.

### E.  *Violation of Plaintiff's Fourteenth Amendment Right to Due Process of Law*

The plaintiff brings this action pursuant to the provisions of Title 42 U.S.C. § 1983, in which she claims that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, deprived of her property right to her position without affording her due process in violation of the Fourteenth Amendment to the United States Constitution.  A procedural due process claim under the Fourteenth Amendment raises the following questions: (1) whether the plaintiff has a protected property interest; (2) what process was due to the plaintiff; and (3) whether plaintiff was provided with this constitutional minimum.  *Narumanchi v. Board of Trustees of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).  Once a protected interest is identified, a court must determine whether the plaintiff was deprived of that interest without due process.  Id.   The factual averments pled by the plaintiff demonstrate that the process employed by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, to remove the plaintiff from her position violated her right to due process of law under the Fourteenth Amendment.  Since the express language of Connecticut General Statutes § 51-290 (d) protected the plaintiff from removal except for just cause, the plaintiff possessed a vested property interest in her position, which the

defendants concede for the purposes of determining the merits of their motion to dismiss.  Since the plaintiff possessed a vested property interest in her continued service as Chief Public Defender, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, could not remove the plaintiff from her position without complying with the procedural due process protections of the Fourteenth Amendment to the United States Constitution.

In the present case, the plaintiff was informed by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, that only termination hearing that she would be accorded by the defendants would be a pre-termination hearing with the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, acting as the final decisionmakers[10].  In his April 12, 2024, letter to plaintiff's counsel, Palmer wrote,

> "As I advised in my March 5, 2024, letter to Chief Public Defender Bowden-Lewis and again in my letter to her on March 28, 2024, at that Hearing, she has the right to counsel, the right to testify or to provide written responses to the Charges contained in my March 5, 2024, letter, the right to present witnesses, and the right to present closing argument.  Documents containing written factual substantiation for the sixteen Charges set forth in my March 5, 2024, letter were emailed and hand-delivered to Chief Public Defender Bowden-Lewis on March 28, 2024, and thereafter, at your request, those materials were emailed to you. A few additional supplemental documents have since been provided to Chief Public Defender Bowden-Lewis and to you.  I wish to reiterate that the April 16, 2024, hearing is Ms. Bowden-Lewis's opportunity to be heard and fully respond, personally or through counsel, to the sixteen Charges listed in my March 5, 2024, letter. *Connecticut General Statutes § 51-290 (d) does not contemplate any further administrative review of the matter, and the Commission urges Chief Public Defender Bowden-Lewis to present any and all evidence that she believes the Commission should consider before reaching its decision. Complaint ¶ 528 (Emphasis added)[11].*

---

[10] In addressing the plaintiff's due process claim, the defendants fail to distinguish between the requirements of a pre-termination hearing to which an attendant right to a full trial type post-termination hearing is available to the plaintiff, and a pre-termination hearing without the right to post-termination process[10].  The defendants' reliance on Connecticut law regarding the adequacy procedural due process is not relevant since federal law determines whether the process afforded the plaintiff comports to federal due process requirements.

[11] In a communication to Palmer's counsel on April 15, 2024, the plaintiff's counsel disputed Palmer's contention, "Plaintiff's counsel responded to counsel for Palmer in writing on April 15, 2024, reminding counsel that "As I have previously communicated to you, I believe the United States Supreme Court, the Connecticut Supreme Court and the United States Court of Appeals for the Second Circuit have rejected the position adopted by [chairperson] Justice

Because the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, refused to provide the plaintiff with full trial type post-termination process following a pre-termination hearing, due process jurisprudence necessitated that the pre-termination hearing satisfy the requirements of a post -termination hearing, including a full trial type proceeding before a neutral adjudicator.   "Although the hearing at issue was a pretermination hearing, it was the only one provided to Mrs. McClure.  Consequently, our due process inquiry is governed by the requirements applied to post-termination hearings…"  *McClure v. Indep. Sch. Dist. No. 16,* 228 F.3d 1205, 1211 (10th Cir. 2000).  "It was undisputed that there are three ways in which the due process requirement of a name clearing hearing can be satisfied: (i) providing the employee with a pre-termination hearing that is not a full evidentiary hearing but is followed post-termination by a full trial type evidentiary hearing; (ii) providing the employee only with a full trial type evidentiary hearing post-termination; and *(iii) providing the employee only with a pretermination hearing that satisfies the requirements for a full trial type evidentiary hearing. See Brock v. Roadway Express, Inc.,* 481 U.S. 252, 264, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Locurto v. Safir,* 264 F.3d 154, 171–75 (2d Cir.2001).  It was also undisputed that the plaintiff was never provided a full, trial-type post-termination hearing, so the pre-termination hearing that was held for the plaintiff had to meet the more rigorous standard of a full trial-type hearing, in addition to satisfying the following minimal due process requirements…" *Voccola v. Gaudett*, 861 F. Supp. 2d 52, 56 (D. Conn. 2012) (Emphasis added).  "Moreover, the hearing afforded this plaintiff before the defendants was not investigatory but adjudicative, which, with its finality,

---

Palmer, and require that Bowden-Lewis be accorded the full due process protections of the fourteenth amendment and article first, § 8 of the Connecticut constitution, including a pre-termination hearing and, if necessary depending on the commission's action, a post-termination, full trial type hearing before an impartial, neutral adjudicator."

constitutionally calls for more procedural safeguards than the defendants recognized were necessary in what was in law and fact not a pretermination hearing but a termination hearing." *Bartlett v. Krause*, 209 Conn. 352, 377 (1988).

At the commencement of the April 16, 2024, pre-termination hearing, plaintiff's counsel objected to the process on the basis that it did not satisfy the rigorous standard of a full trial-type hearing.  Plaintiff's counsel also moved that Palmer, Prat, Solomon, Morin, Jefferson, and Woodard disqualify themselves from hearing the matter because they were no longer neutral adjudicators as required by the Fourteenth Amendment to the United States Constitution.  "The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, refused to disqualify themselves from acting as decisionmakers at the plaintiff's termination hearing, and having a neutral adjudicator decide whether there was just cause to remove the plaintiff, which they refused to do."  *Complaint ¶ 89.*   The presumption that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, would be impartial is not applicable under the facts of the present case since the evidence demonstrates that they had already found against the plaintiff on the merits of a substantial portion of the reasons being advanced for her removal when they issued her a formal written reprimand for voicing claims of discrimination.  *Complaint ¶ 533 ("*The defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, were not neutral adjudicators, having already punished the plaintiff for voicing opposition to the discriminatory treatment to which she had been subjected by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, when she was issued a "written reprimand," and for which she was being charged for the same violations a second time").

The proposition that due process requires a full trial type hearing before a neutral adjudicator has long been recognized by the Second Circuit Court of Appeals.  In *Locurto v. Safir,* 264 F.3d 154 (2d Cir.2001), the Court of Appeals held that a pre-termination hearing need not be in front of a neutral decisionmaker, so long as "the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator."  *Id.* at 274.  Although the Court of Appeals held in *Locurto* that a neutral adjudicator was not required at a pre-termination hearing, it explicitly limited its finding "to the situation where the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator.  *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001).  "The Connecticut Supreme Court recognized in *Bartlett v. Krause*, 209 Conn. at 377-378 that an administrative appeal to the Connecticut Superior Court does not meet the "full adversarial hearing before a neutral adjudicator" post-termination standard.  "There are times when no more is required than notice and the opportunity to present reasons, either orally or in writing, why the proposed action should not be taken. *This is not one of those cases*. Rather, it is a case that leans more toward those cases where 'due process may also require further procedural safeguards such as the opportunity to confront and cross-examine adverse witnesses, oral argument, presentation of evidence and the right to retain an attorney.' *In re Solid Waste Utility Customer Lists*, 106 N.J. 508, 521, 524 A.2d 386 (1987); 2 K. Davis, Administrative Law Treatise (1982 Sup.) § 10.6, pp. 326–27, citing *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This is particularly so because of the absolute lack, in this case, of any post-termination procedures at the administrative level wholly unlike *Loudermill* and *Duchesne*. *The appeal to the Superior Court under § 29–300 is judicial, not administrative, review and was not, as we have shown, intended to be de novo.* Moreover, the hearing afforded this plaintiff before the defendants was not investigatory but adjudicative, which, with its finality,

constitutionally calls for more procedural safeguards than the defendants recognized were necessary in what was in law and fact not a pretermination hearing but a termination hearing. The need for procedural safeguards that due process guarantees in this case goes beyond the notice and opportunity ('right to respond') language of § 29–300[12] and that is evident from all that we have said, particularly from a balancing of the interests at stake." *Bartlett v. Krause*, 209 Conn. 352, 377–78, 551 A.2d 710, 722–23 (1988).  In contrast to the process available to the plaintiff, the court in Locurto found that the New York Article 78 proceeding provided the plaintiff with the required post-termination full adversarial hearing.  "An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims. *Gudema,* 163 F.3d at 724.  Petitioners proceeding under Article 78 may raise claims that the agency adjudicator was biased and prejudged the outcome…" *Locurto v. Safir*, 264 F.3d at 174.  Unlike an Article 78 proceeding, an administrative appeal under the Connecticut Uniform Administrative Procedure Act does not provide for a trial on disputed issues, including constitutional claims. "Neither appellate court nor the trial court may retry case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact; appellate court's ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion."  *Meyers v. Town of Middlefield*, 202 Conn. App. 264, 245 A.3d 851 (2021).  "The appeal shall be conducted by the court without a jury and shall be confined to record. If alleged irregularities in procedure before the agency are not shown in the record or if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken in the court. The court, upon request,

---

[12] The same language employed in Connecticut General Statutes § 51-290 (d).

shall hear all argument and receive written briefs." § 4-183(h)(i)."  *Barbarino v. Wallingford Inland Wetlands*, No. CV 91-0318300 S, 1995 WL 591468, at \*7 (Conn. Super. Ct. Sept. 27, 1995).

Since the plaintiff was not afforded a post-termination full trial type hearing before an impartial decisionmaker, the plaintiff was entitled to be provided these very same protections at the only hearing provided to him, the pre-termination hearing.  *Locurto v. Safir,* 264 F.3d 154, 174 (2d Cir.2001).  "[W]e conclude that due process is satisfied so long as the government provides a neutral adjudicator at the post-termination hearing for a tenured public employee." *Locurto v. Safir*, 264 F.3d at 173.  "A fundamental requirement of due process in the school disciplinary context is that a hearing be held before an impartial decision maker. *See Winnick v. Manning,* 460 F.2d 545, 548 (2d Cir.1972). Here, the Plaintiffs have not alleged any facts to support actual bias, conflict of interest, or prior involvement by any of the Defendants who participated in the disciplinary hearing process, and thus, their bald assertion that Appellees Paul Zuckerman and Jonathan Raskin were not impartial is insufficient to state a claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)))."  *Holmes v. Poskanzer*, 342 F. App'x 651, 653 (2d Cir. 2009).  Unlike the pleadings presented to the court in *Holmes v. Poskanzer,* supra, the plaintiff in the instant case has alleged, in the very least, "prior involvement by [ ] the Defendants who participated in the disciplinary hearing process[13]."  As stated above, the defendants had already disciplined the plaintiff for several of the very charges on which they were sitting again as

---

[13] The decisionmakers in this case were the very subjects of the plaintiff's previous accusations of discriminatory behavior.  As such, they could not be considered impartial adjudicators.

decisionmakers.  They were also sitting in judgment on charges of discriminatory conduct of which they were the very subjects.

The process employed by the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, including their violations of the Connecticut Freedom of Information Act by proceeding in secret executive session, demonstrates a plausible claim that the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, violated the plaintiff's Fourteenth Amendment due process rights.

### F.  Personal Liability of Palmer, Prat, Solomon, Morin, Jefferson, and Woodard Under Title 42 U.S.C. § 1983

The plaintiff asserts monetary claims against the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, only in their individual capacities.  As such, the defendants do not have Eleventh Amendment immunity from the plaintiff's cause of action.  See *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F. 2d 84, 87, 89, fn.4 (2d Cir. 1991); *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 529 (2d. Cir. 1993); *State v. Cahill*, 217 F.3d 93, 101 (2d Cir. 2000); *Garcia v. Akwesasne Housing Authority*, 268 F. 3d 76 (2d Cir. 2001).  Palmer, Prat, Solomon, Morin, Jefferson, and Woodard are individually liable under Title 42 U.S.C. § 1983, because, as alleged throughout plaintiff's complaint, they each participated in the deprivation of the plaintiff's statutory and constitutional rights.  "An individual may be held liable under Section 1983 only if that individual is 'personally involved in the alleged deprivation.' *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). "A plaintiff can establish a defendant's personal involvement by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

48

unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4)
the defendant was grossly negligent in supervising subordinates who committed the wrongful
acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information
indicating that unconstitutional acts were occurring." *Littlejohn*, 795 F.3d at 314 (ellipsis in
original) (quoting *Back*, 365 F.3d at 127)." *Chislett v. New York City Dep't of Educ.*, No. 1:21-
CV-09650 (JLR), 2024 WL 1118852, at \*5–6 (S.D.N.Y. Mar. 14, 2024).  "The Equal Protection
Clause of the Fourteenth Amendment protects public employees from discrimination on the basis
of a protected class.... *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir.
2015). Public employees may bring discrimination claims under 42 U.S.C. § 1983 against
'responsible persons acting under color of state law.' *Id.* at 87. Any state employee 'acting in his
official capacity' acts 'under color of state law.' *Id.* at 88 (internal quotation marks omitted). An
individual may only be held liable under Section 1983 'if that individual is personally involved
in the alleged deprivation.' *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015)
(internal quotation marks omitted in the original)."  *Freeman v. Sansom,* No. 3:22-CV-331
(VAB), 2024 WL 665921, at \*6 (D. Conn. Feb. 16, 2024).

**G. *Fourth Cause of Action – Wrongful Removal in Violation of Connecticut General Statutes § 51-290 (d)***

The plaintiff will not pursue in this forum her Fourth Cause of Action for wrongful removal in violation of Connecticut General Statutes § 51-290 (d).

THE PLAINTIFF – TASHUN BOWDEN-LEWIS

BY: /s/Thomas W. Bucci
Thomas W. Bucci
Federal Bar No. ct07805
Willinger, Willinger & Bucci, P.C.
1000 Bridgeport Avenue
Ste 5th Floor Suite 501
Shelton, CT 06484
203-366-3939
Fax: 475-269-2907
Email: thomaswbucci@outlook.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on October 10, 2024, a copy of foregoing Memorandum In Opposition to Defendants' Motion to Dismiss was filed electronically and served on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

PLAINTIFF – TaSHUN BOWDEN-LEWIS

BY: /s/<u>Thomas W. Bucci</u>
Thomas W. Bucci, Esq.
Federal Bar No. ct07805
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT 06604
Tel. No. (203) 366-3939
Fax No. (203) 337-4588
Email: thomaswbucci@outlook.com