**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TASHUN BOWDEN-LEWIS,<br>    *Plaintiff*,<br><br>     v.<br><br>RICHARD N. PALMER, *et al.*<br>    *Defendants*. | No. 3:24-cv-01126 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

TaShun Bowden-Lewis ("Ms. Bowden-Lewis") has sued the Honorable Richard N. Palmer ("Justice Palmer"), the Honorable Sheila M. Prats ("Judge Prats"), the Honorable Elliot N. Solomon ("Judge Solomon"), the Honorable Russel Morin ("Judge Morin"), Michael Jefferson ("Mr. Jefferson"), and Herman Woodward ("Mr. Woodward") (collectively, "Defendants") in their individual capacities for violating her constitutional rights as secured by the U.S. Constitution and for violating Conn. Gen. Stat. § 51-290(d) ("§ 51-290(d)"). Compl. ¶¶ 1–6, ECF No. 1 (June 28, 2024) ("Compl."). She alleges disparate treatment, retaliation, and violation of her procedural due process rights under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1983, and 1988.

The Defendants have moved to dismiss the case under Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss, ECF No. 21 ("Mot. to Dismiss").

For the following reasons, the Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

Ms. Bowden-Lewis's Conn. Gen. Stat. § 51-290(d) claim is dismissed.

All of the other claims remain.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Ms. Bowden-Lewis is African American. Compl. ¶ 17. She alleges that, on or around

June 3, 2022, the State of Connecticut Public Defender Services Commission ("Commission")

appointed her to the position of Chief Public Defender, a four-year position from which she

could not be removed or suspended without just cause, due notice, and a removal hearing. *Id.* ¶

18–19.

Ms. Bowden-Lewis allegedly holds a Bachelor of Arts degree in Sociology from

Georgetown University and a Juris Doctor degree from Quinnipiac University, and is licensed to

practice law in the State of Connecticut. *Id.* ¶¶ 42–44. She alleges that, during all times relevant

to this suit, Judge Palmer served as the Chairperson of the Commission, and that the remaining

Defendants were all members of the Commission. *Id.* ¶ 20–25. The Public Defender Services

Commission is allegedly a political subdivision of the State of Connecticut, *id.* ¶ 41, and she

served as a public defender in the Connecticut Superior Courts for the Judicial Districts of New

Haven and Waterbury from approximately 1998 to 2022, *id.* ¶ 45.

Section 51-290(a) establishes a four-year appointment for the office of Chief Public

Defender, *id.* ¶ 49 (citing § 51-290(a)), and Section 51-290(d) establishes that, "The Chief Public

Defender and Deputy Chief Public Defender shall not be removed or suspended from office

during their terms except by order of the commission for just cause after due notice and hearing,"

*see id.* (citing § 51-290(d)).

On October 3, 2023, the Defendants allegedly issued Ms. Bowden-Lewis a formal letter

of reprimand, which cited her opposition to being allegedly subjected to racial discrimination as

a reason for her discipline. *Id.* ¶ 53. Seven out of the ten reasons for the reprimand allegedly

concerned her opposition to being subjected to racial discrimination. *Id.* ¶ 54. Ms. Bowden-Lewis asserts that the Defendants subjected her to race and color discrimination—when micromanaging her job performance and by holding her to different performance standards than her Caucasian predecessors— and that her opposition was allegedly a determinative factor in their decision to discipline her and were allegedly discussed in the written reprimand. *Id.* ¶ 55.

On December 19, 2023, Ms. Bowden-Lewis's legal counsel sent a letter to the Defendants expressing her opposition to the alleged racial discrimination to which she alleged the Defendants subjected her. *Id.* ¶ 375.

On February 9, 2024, the Defendants allegedly had the Commission suspend Ms. Bowden-Lewis from her position as Chief Public Defender, after she complained again about the Defendants' discriminatory conduct. *Id.* ¶ 57.

Ms. Bowden-Lewis alleges that the Defendants failed to objectively investigate her claims of racial discrimination. *Id.* ¶ 59. A law firm hired and paid for by the Commission issued a report which allegedly found that:

> *[t]his is a difficult area to evaluate because race could be an implicit factor in at least some witnesses' reactions to Ms. Bowden-Lewis's priorities and actions as Chief*; as one witness explained, former Chiefs also declined to grant Department heads' requests for additional attorneys, but they did not complain to the Commission about those Chiefs, while they did complain about Ms. Bowden-Lewis (insinuating that it is because Ms. Bowden-Lewis is [B]lack). We find, however, that the driving factor that led to such complaints was not Ms. Bowden-Lewis' race, but her lack of clear communication and management skills. Further, while perhaps legitimate in certain instances, the sheer number of instances in which Ms. Bowden-Lewis has used race-based comments to insinuate or outright state that other employees or members of the Commission are racist based on their legitimate disagreements with her management of OCPD could be classified as bullying, and has contributed to an environment within OCPD where employees are fearful to raise any issues regarding her leadership, lest they be labeled racists.

*Id.* ¶ 75 (emphasis and alteration in Complaint).

On March 5, 2024, the Defendants, as the Commission, allegedly issued Ms. Bowden-Lewis a Notice of Charges and Hearing letter ("Charge Letter") that provided more information about the reasons for her suspension and allegedly initiated her removal from the position of Chief Public Defender. *Id.* ¶ 76. The Defendants allegedly charged Ms. Bowden-Lewis with sixteen violations that constituted just cause removal, *id.* ¶ 77, and specifically cited Ms. Bowden-Lewis for "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission," *id.* ¶ 79, 81.

Regarding her accusations of racial discrimination on the part of the Commission, the Charge Letter allegedly said:

> Following your appointment as Chief Public Defender by the prior Commission in 2022, your attorney wrote to that Commission on your behalf on March 6, 2023, expressing your concern that certain Commission decisions with which you did not agree were a "pretext for discrimination." Thereafter, in an email from you to the current Chairperson on August 17, 2023, you indicated that the Chairperson had conducted himself in a racially discriminatory manner toward you. Although you subsequently denied that you were alleging such conduct by the Chairperson, it is clear from your email's plain language, as well as from a letter your attorney sent to the Commission on December 19, 2023, expressly reiterating your claim of discrimination against the Chairperson, that you were, in fact, claiming such discrimination. In that December 19, 2023, letter, your attorney also accused the Commission of "continued acts of discrimination and retaliation against [you]." The letter further alleged that the Commission's actions "demonstrate an apparent disregard for [your] right to oppose discrimination, free from retaliation," and asserted that the Letter of Reprimand you received from the Commission on October 3, 2023, was issued in retaliation for your complaints of racial discrimination against the Commission. Subsequently, in an email you sent to the Chairperson on January 18, 2024, you stated that "[the Chairperson's] continued assertions that [your] complaints about discrimination and retaliation are 'unfounded' and 'baseless' demonstrate [the Chairperson's] own animus and bias." Again, on January 23, 2024, in a third letter sent to the Commission on your behalf, your attorney

> accused the Commission of "continued retaliation and discrimination against [you]," stating, as well, that, "[s]adly, the Commission continues to retaliate and discriminate against [you], inflict damage on [your] reputation and [your] career, and undermine [your] ability to effectively carry out [your] mission." Even more recently, on February 9, 2024, in your response to questions posed to you by the Chairperson concerning your accessing of emails of certain Division members without their knowledge, you expressed your belief "that the Chair's response and handling of this . . . issue represents additional discrimination and retaliation against me."

*Id.* ¶ 82 (alterations in original).

On April 12, 2024, Justice Palmer allegedly informed Ms. Bowden-Lewis's counsel by letter that she had the opportunity to be heard on the charges at an April 16, 2024 hearing. *Id.* ¶ 87. The letter allegedly said: "the April 16, 2024, hearing is Ms. Bowden-Lewis's opportunity to be heard and fully respond, personally or through counsel, to the sixteen Charges listed in my March 5, 2024, letter. *Connecticut General Statutes § 51-290 (d) does not contemplate any further administrative review of the matter*, and the Commission urges Chief Public Defender Bowden-Lewis to present any and all evidence that she believes the Commission should consider before reaching its decision." *Id.* (emphasis in Complaint).

On April 15, 2024, Ms. Bowden-Lewis, through her counsel, allegedly responded in writing and represented that the law allegedly requires the Commission to provide her with full due process protections, including a pre-termination hearing, and, if necessary, a post-termination hearing before an impartial, neutral adjudicator. *Id.* ¶ 88. The Defendants allegedly did not disqualify themselves from acting as decisionmakers during this hearing and allegedly chose not to appoint an allegedly neutral adjudicator. *Id.* ¶ 89.

On April 16, 2024, the Defendants allegedly held a removal hearing for Ms. Bowden-Lewis. *Id.* ¶ 665. At the beginning of the hearing, Ms. Bowden-Lewis allegedly demanded the session be conducted as an open session and not as an executive session in accordance with her

rights under the Freedom of Information Act. *Id.* ¶ 666. The hearing was allegedly recessed until April 25, 2024. *Id.* ¶ 667.

On April 25, 2024, the removal hearing allegedly resumed in open session. *Id.* ¶ 668. The Defendants allegedly stated that they would not rule on Ms. Bowden-Lewis's removal and allegedly adjourned the meeting to a later, unspecified date. *Id.* ¶ 669. The Defendants allegedly met in executive session after that hearing concluded to allegedly further discuss Ms. Bowden-Lewis's removal from the office of Chief Public Defender. *Id.*

On May 21, 2024, the Defendants allegedly met in executive session to discuss Ms. Bowden-Lewis's removal without Ms. Bowden-Lewis present. *Id.* ¶ 671. Ms. Bowden-Lewis's counsel allegedly was informed that the May 21, 2024, meeting was cancelled and rescheduled to June 4, 2024. *Id.* ¶ 672.

On June 4, 2024, the Defendants allegedly held the final removal hearing. *Id.* ¶ 675. They allegedly voted immediately to conduct the session as an executive session. *Id*. When they returned to public session, Ms. Bowden-Lewis's counsel allegedly asked the Defendants to state on the public record the legal reasons for conducting the meeting in executive session. *Id.* ¶ 677. Justice Palmer allegedly stated that the reason for the executive session was that the Defendants usually conducted business in executive session and that Ms. Bowden-Lewis did not object. *Id.* ¶ 678. Ms. Bowden-Lewis alleges that Justice Palmer did not provide a statutory basis for the executive session. *Id.* The Defendants then issued a decision to remove Ms. Bowden-Lewis from her position. *Id.* ¶ 90. She was allegedly removed before the end of her four-year term, a term set to expire on June 2, 2026. *Id.* ¶ 680.

In justifying her removal from office, the Defendants allegedly claimed just cause because Ms. Bowden-Lewis had allegedly failed to follow their instructions to provide the

complex litigation section of the Division of Public Defender Services with an additional public defender. *Id.* ¶ 682. The Defendants allegedly did not discipline, however, her Caucasian predecessors in the Chief Public Defender position, who did not add a public defender to the same section. *Id.* ¶¶ 92, 683. The Defendants also allegedly cited as part of their just cause for removing Ms. Bowden-Lewis that she allegedly resisted the appointment of an allegedly less qualified white candidate over a more qualified African American candidate for the position of Human Resources Director for the Division of Public Defender Services. *Id.* ¶¶ 684, 93.

As another just cause, the Defendants allegedly removed Ms. Bowden-Lewis because she failed to comply with Conn. Gen. Stat. § 51-291(13), regarding the Connecticut Public Defender Services Commission's budgetary process. *Id.* ¶ 686. Section 51-291(13) allegedly provides that the Chief Public Defender shall "[p]repare and submit to the commission estimates of appropriations necessary for the maintenance and operation of public defender services, and make recommendations with respect thereto; and with the approval of the commission, and after such modification as the commission directs, submit the budget requests to the Governor." *Id.* ¶ 687. The Defendants were allegedly aware that some of Ms. Bowden-Lewis's predecessors, who were white, did not submit to the Connecticut Public Defender Services Commission such estimates of appropriations in violation of § 51-291(13), and that those predecessors were not disciplined. *Id.* ¶¶ 688, 95, 97.

The Commission also allegedly cited as a just cause an accusation that Ms. Bowden-Lewis had searched an employee's e-mails allegedly without a valid reason for doing so, even though the Commission acknowledged that the employee "did not have a reasonable expectation of privacy in his emails." *Id.* ¶¶ 690–91, 98–99.

Division of Public Defender Services Policy No. 605 allegedly provides that:

> All activities involving the use of State systems are not personal or private; therefore, *users should have no expectation of privacy in the use of these resources*. Information stored, created, sent or received via State systems is potentially accessible under the Freedom of Information Act. Pursuant to Public Act 98-142 and the State of Connecticut's "Electronic Monitoring Notice" *the Division of Public Defender Services reserves the right to monitor and/or log all activities without notice. This includes but is not limited to correspondence via e-mail and facsimile.*

*Id.* ¶ 692 (emphases in Complaint).

> Policy 605 further allegedly provided that:

> [T]he assignment of equipment or the ability to access various systems does not confer, implicitly or explicitly, any expectation of privacy with respect to the issue of such equipment or systems to anyone acting as an agent of the Division or employed by the Division regardless of the type of position (permanent, temporary, per-diem or contractual). *The Division reserves the right to access at any time and for any reason all equipment and systems without the specific knowledge and permission of such individuals.* Information Technology Department employees who access systems during the course of their duties will adhere to confidentiality standards.

*Id.* ¶ 693 (emphasis in Complaint).

Ms. Bowden-Lewis therefore alleges that her inspection of the e-mails of various subordinate employees did not meet the just cause standard for her removal. *Id.* ¶ 695.

The Defendants also allegedly cited as a reason for her removal that Ms. Bowden-Lewis did not acknowledge the "overarching statutory authority of the Commission in regard to the functions and operation of the Division," and the requirement that she "comply with all directives and requests of the Commission." *Id.* ¶ 697 (emphasis omitted). The Commission allegedly does not have such "overarching authority" and, instead, authority over the day-to-day management of the Division allegedly rests with the Chief Public Defender. *Id.* ¶ 698.

Ms. Bowden-Lewis has allegedly suffered emotional distress and the loss of economic compensation and benefits as a result of her removal. *Id.* ¶¶ 701–02.

### B. Procedural History

On June 28, 2024, Ms. Bowden-Lewis filed her Complaint against the Defendants.
Compl. She seeks declaratory, injunctive, and equitable relief, as well as compensatory damages,
and costs and attorney's fees for the deprivation of her constitutional rights. *Id.* ¶ 3. She also
seeks prospective injunctive and equitable relief, and compensatory damages for the violation of
§ 51-290 (d). *Id.* ¶ 4. Specifically, she claims backpay, benefits, and attorney's fees from all
Defendants in their individual capacities. *Id.* ¶ 5. Ms. Bowden-Lewis also seeks prospective
injunctive and equitable relief in the form of reinstatement to the position of Chief Public
Defender. *Id.* ¶ 6.

On September 27, 2024, the Defendants filed a motion to dismiss and an accompanying
memorandum of law. Mot. to Dismiss; Defs.' Mem. of Law in Supp. of Mot. to Dismiss, ECF
No. 21-1 (Sept. 27, 2024) ("Mem.").

On October 10, 2024, Ms. Bowden-Lewis filed a memorandum in opposition of the
motion to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF No. 25 (Oct. 10, 2024) ("Opp'n).

On November 14, 2024, the Defendants filed their reply brief. Defs.' Reply Br. in Supp.
of Their Mot. to Dismiss, ECF No. 29 (Nov. 14, 2024) ("Reply").

On November 17, 2024, Ms. Bowden-Lewis filed a motion for permission to file a sur-
reply, Pl.'s Mot. for Leave to File a Sur-Reply, ECF No. 31, which the Court granted on
November 18, 2024, Order, ECF No. 32.

On November 22, 2024, Ms. Bowden-Lewis filed her sur-reply. Pl.'s Sur Reply to Defs.'
Reply Mem., ECF No 33 (Nov. 22, 2024) ("Sur-Reply").

On April 14, 2025, the Defendants filed a consent motion to stay discovery and an accompanying memorandum of law. Mot. to Stay Disc., ECF No. 36; Defs.' Mem. of Law in Supp. of Mot. to Stay Disc., ECF No. 36-1.

On April 15, 2025, the Court granted the consent motion. Order, ECF No. 37.

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* at 57. "In opposition to such a motion, the

plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (alteration in original) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B.  Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the

plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Ms. Bowden-Lewis's Complaint seeks relief under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 for violations of her civil rights and alleges that Defendants (1) unlawfully discriminated against her based on her race and color, *see* Compl. ¶¶ 236–52; (2) unlawfully retaliated against her when she raised complaints of racial discrimination, *id.* ¶¶ 370–404; and (3) violated her right to procedural due process in removing her from the position of Chief Public Defender, *id.* ¶¶ 522–43. She also alleges that the Defendants unlawfully removed her in violation of Conn. Gen. Stat. § 51-290(d).

The Defendants have moved to dismiss all of the claims in the Complaint.

The Court will address each of these claims in turn.

### A. The 42 U.S.C. § 1981 Claims

"Section 1983 'constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023) (citation omitted) (quoting *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018)); *see also Williams v. Conn. Dep't of Corr.*, 3:16-CV-01612 (VAB), 2017 WL 2838081, at *6 (D. Conn. June 30, 2017) ("The Second Circuit has reaffirmed the Supreme Court's holding in *Jett* and has declined to take up Section 1981 claims separately from Section 1983 claims when those Section 1981 claims are brought against state actors.").

#### 1. The Unlawful Discrimination Claim

"The Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, provides public employees with the right to be free from discrimination." *Buon v. Spindler*, 65 F.4th 64, 78 (internal quotation marks omitted) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A state employee acting in his official capacity is acting under color of state law." *Vega*, 801 F.3d at 88 (internal quotation marks and citation omitted). "Once the color of law requirement is met, a plaintiff's equal protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.*

For a "discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse

employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Buon*, 65 F.4th at 79 (alteration in original) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2nd Cir. 2015)).

In order to provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent," *id.*, under Section 1983, the facts must give rise to an inference of intentional discrimination regarding the specific defendants against whom the claim is brought. *Patterson v. Cnty of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional[.]"); *see also Naumovski v. Norris*, 934 F.3d 200, 215 (2d Cir. 2019) ("[A] § 1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action.").

The Defendants argue that Ms. Bowden-Lewis has failed to state a claim of unlawful discrimination on the basis of race because she fails to plead that she was treated differently from similarly situated comparators who do not share her protected characteristics. Mem. 11–12. That is, she failed to specifically identify any comparators by name and instead referred generically to her "predecessor," which the Defendants argue is insufficient to sustain a claim of unlawful discrimination.

They also argue that she has failed to plead that any of the six individual Defendants were personally involved in any allegedly disparate treatment of the alleged comparator. *Id.* at 12. The Defendants argue that all of the Defendants joined the Commission after the previous Commissioners had appointed Ms. Bowden-Lewis as Chief Public Defender. Reply 4 (citing Public Defender Services Commission Members, Connecticut State Division of Public Defender

Services, https://portal.ct.gov/ocpd/commission/commission-members).[1] Thus, in their view, since Ms. Bowden-Lewis has failed to plead that the Defendants supervised or exercised any authority over her predecessors, she cannot support a claim that they were personally involved in any alleged disparate treatment. *Id.*

The Court disagrees in part, at least, for right now.

Ms. Bowden-Lewis's race and gender place her in protected classes and her "termination from employment constitutes an adverse employment action." *Hampton v. Branch*, 3:18-cv-1444 (VAB), 2020 WL 3129264, at *10 (June 13, 2020). In her Complaint, Ms. Bowden-Lewis alleges that Defendants cited as just cause for her removal two alleged infractions for which her white predecessors had not been disciplined. *See* Compl. ¶¶ 682–98, 51, 91. These alleged infractions include: (1) failing to follow instructions to provide the complex litigation section of the Division with an additional public defender, *id.* ¶¶ 682–83, and (2) allegedly failing to comply with certain statutory appropriations requirements when Defendants were fully aware that some of her white predecessors did not comply with those provisions, *id.* ¶¶ 687–88.

Ms. Bowden-Lewis has brought her claims against each Defendant in their individual capacity, and it is well settled that a defendant sued in their individual capacity in a Section 1983 suit may not be held liable for an award of damages to a plaintiff absent "personal involvement" in the conduct resulting in a constitutional violation. *See Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) ("'[A] plaintiff must

---

[1] The Court can take judicial notice of publicly available information about the relevant parties. *See, e.g.*, *Abdullah v. Travelers Ins. Co.*, No. 13-CV-07825, 2014 WL 6807932, at *4 n.9 (S.D.N.Y. Oct. 28, 2014) (taking judicial notice "of the fact that no such insurance company [as the plaintiff alleges] is currently registered to do business in New York, based on available, online public records" and concluding that the plaintiffs had therefore improperly named the insurance company as a defendant).

plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" (quoting *Iqbal*, 556 U.S. at 676)).

None of the Defendants were directly involved in the treatment of Ms. Bowden-Lewis's predecessors, as they all joined the Commission after she had been appointed. *See* Reply 4. Personal involvement can be also demonstrated, however, by plausibly alleging that the Defendants were aware of the violation and failed to remedy it. *See Littlejohn*, 795 F.3d at 314 ("Personal involvement can be established by showing that . . . the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[.]") (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). Ms. Bowden-Lewis alleges that the Defendants were aware that her white predecessors also failed to follow proper appropriations procedures under Section 51- 291(13) and that those predecessors were not disciplined for that conduct. *Id.* ¶ 97.

Having concluded that she sufficiently alleged personal involvement by Defendants in the allegations supporting her disparate treatment claim with regard to compliance with Section 51- 291(13), at the very least, the Court will evaluate whether Ms. Bowden-Lewis has plausibly alleged that Defendants were "motivated by discriminatory intent." *See Buon*, 65 F.4th at 79 (quoting *Littlejohn*, 795 F.3d at 311).

"To allege the requisite discriminatory intent, a plaintiff may allege 'facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 214 (E.D.N.Y. 2019) (quoting *Vega*, 801 F.3d at 87). Indirect evidence may include "evidence that similarly situated comparators outside of Plaintiff's protected class were treated more favorably than Plaintiff." *Id.* (citing *Littlejohn*, 795 F.3d at 312). "[C]ourts generally will look to

whether a plaintiff and his comparators were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). To survive a motion to dismiss, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84 (citing *Littlejohn*, 795 F.3d at 306).

Ms. Bowden-Lewis meets this "minimal" pleading standard. *Littlejohn*, 795 F.3d at 313. She alleges that:

> In disciplining the plaintiff for her alleged failure to submit to the Connecticut Public Defender Services Commission estimates of appropriations, [Defendants] were fully aware that previous Chief Public Defenders, who were white, did not submit to the Connecticut Public Defender Services Commission estimates of appropriations to the Connecticut Public Defender Services Commission in violation of Connecticut General Statutes § 51-291(13), and, unlike the plaintiff, went undisciplined.

Compl. ¶ 97.

These allegations "raise a right to relief above the speculative level," *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019) (citing *Twombly*, 550 U.S. at 555), and the "factual content . . . allows the [C]ourt to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* (citing *Iqbal*, 556 U.S. at 678); *see also id.* ("The plaintiffs in this case have satisfied the standard of plausibility by alleging differential treatment by the same defendant (Burkart) for the same conduct (having a pool of standing water) at the same jobsite (the 34th Avenue Jobsite). While these allegations are admittedly few in number, they nonetheless allow us to plausibly infer a reasonably close resemblance between the plaintiffs and the white workers.") (citation modified); *Arcamone v. Town of Trumbull*, No. 3:20-cv-00019 (VAB), 2021 WL 311281, at *7 (D. Conn. Jan. 29, 2021) (finding that plaintiff's allegation that "[u]pon information and belief, other similarly-situated male [p]olice [o]fficers have engaged in

17

similar, if not worse, conduct than [she did,] yet they were subjected to less severe levels of discipline" met the standard to survive a motion to dismiss).

Because this aspect of her unlawful discrimination will proceed, the Court will exercise "its inherent authority to manage [its] docket[ ] and courtroom[ ] with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and defer consideration of the issue of whether any other aspect of her unlawful discrimination claim will survive, following discovery and at the summary judgment stage. *See, e.g.*, *Sutter v. Dibello*, 18-cv-817 (SJF)(AKT), 2021 WL 930459, at *23 (E.D.N.Y. March 10, 2021) ("While discovery may ultimately discern characteristics of those comparators, or their circumstances, which render the resemblance between them and plaintiff less than 'reasonably close,' at this early stage in the litigation, plaintiff's failure to plead such fact-specific details does not bar her disparate treatment claims."); *id.* ("[I]t is precisely in light of the inquiry's fact-intensive nature that we have cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." (quoting *Hu*, 927 F.3d at 97)).

Accordingly, Defendants' motion to dismiss Ms. Bowden-Lewis's Section 1983 claim for unlawful discrimination will be denied.

### 2.  The Unlawful Retaliation Claims

"For a retaliation claim, a plaintiff must plead facts that plausibly show '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Johnson v. Conn. Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, No. 3:17-cv-00901 (JAM), 2018 WL 306697, at *6 (D. Conn. Jan. 5, 2018) (quoting *Littlejohn*, 795 F.3d at 316). "As in discrimination claims, the elements of a retaliation claim

based on an equal protection violation under § 1983 mirror those under Title VII." *Vega*, 801 F.3d at 91.

Ms. Bowden-Lewis alleges that she engaged in several acts of protected activity, including a letter sent to the Commission by her attorney on March 6, 2023, expressing concern that certain of the Commission's decision might be a "pretext for discrimination," Compl. ¶ 82; an August 17, 2023 e-mail to Chairman Palmer indicating that he had "conducted himself in a racially discriminatory manner," *id.*; sending a letter to the Commission through her attorney on December 19, 2023, accusing the Commission of "continued acts of discrimination and retaliation," *id.*; an e-mail to Chairman Palmer on January 18, 2024, reiterating her allegations of discrimination and retaliation, *id.*; a third letter sent by her attorney to the Commission expressing concern about discrimination and retaliation, *id.*; and a response that she sent to the Commission on February 9, 2024, to questions posed to her about allegations that she had accessed the e-mails of employees without their knowledge, in which she alleged that "the Chair's response and handling of this . . . issue represents additional discrimination and retaliation," *id.* (alterations in Complaint).

She alleges that the Defendants retaliated against her for this activity by issuing her a letter of reprimand on October 3, 2023; suspending her for two months with pay starting on February 3, 2023; and removing her from the position of Chief Public Defender. *See id.* ¶ 371.

The Defendants argue that Ms. Bowden-Lewis has failed to state a claim of retaliation under the Equal Protection Clause because she has "fail[ed] to identify any discriminatory conduct taken by any of the six Defendants that she was opposing" during her allegedly protected activity and that she has failed to "identify[] any specific actions taken by any individual defendant that demonstrates retaliatory animus." Reply at 7–8 (alterations in original

omitted). The Defendants argue that this is "improper group pleading." *Id.* at 8. The Defendants also argue that "Plaintiff's own Complaint states that an independent investigation conducted by an outside law firm concluded that Plaintiff bullied both Division employees and the Defendants by accusing them of racism if they disagreed with her," and that the temporal proximity between the alleged protected activity and her termination is not sufficient to sustain a plausible claim of retaliation. *Id.* at 7.

The Court disagrees.

First, "[i]t is not impermissible group pleading to allege that defendants acted collectively to take a retaliatory action. *Cardwell v. Davis Polk & Wardwell LLP*, 1:19-cv-10256-GHW, 2020 WL 6274826, at *38 (S.D.N.Y. Oct. 24, 2020). Pleading a collective action in a complaint provides a defendant, "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Id.* (citation modified) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).

Second, to the extent that the Defendants argue that the law firm's findings demonstrate that Ms. Bowden-Lewis's complaints to the Commission of racial discrimination were without merit, even if protected activity "is ultimately without merit, lodging the complaint is a protected activity so long as it was 'motivated by a good faith, reasonable belief that the underlying employment practice was unlawful[.]'" and "'[t]he reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances' and is 'evaluated from the perspective of a reasonable similarly situated person.'" *Leroy v. Delta Air Lines*, 21-267-cv, 2022 WL 12144507, at *4 (2d Cir. Oct. 27, 2022) (summary order) (first quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013); and then quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14–15, 17 (2d Cir., 2013)). At this state of the

litigation, it would be premature for the Court to determine whether Ms. Bowden-Lewis had a good faith and reasonable belief to support the complaints of racial discrimination and retaliation that she and her attorney sent to the Defendants.

Third, the temporal nexus between her protected activity—the alleged letters of January 18, 2024, and February 9, 2024—and the series of hearings leading to her termination on June 4, 2024—could be sufficient to indirectly establish causation for the purpose of a motion to dismiss. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001))).

And Ms. Bowden-Lewis also alleges that one of the charges cited in the Commission's letter regarding her suspension and the initiation of removal proceedings was for "Repeated Unfounded Accusations of Discrimination, Bias, and Retaliation Against the Commission." Compl. ¶¶ 76–77, 79, 81. At the motion to dismiss stage, that is sufficient to plausibly allege "'a causal connection between the protected activity and the adverse employment action.'" *Johnson*, 2018 WL 306697, at *6 (quoting *Littlejohn*, 795 F.3d at 316).

Accordingly, the Defendants' motion to dismiss Ms. Bowden-Lewis's retaliation claim will be denied.

### 3.  The Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive

individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).

"In order to prevail on a § 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Arrocha v. City Univ. of N.Y.*, 878 F. Supp. 2d 364, 372 (E.D.N.Y. 2012) (internal quotation marks and citation omitted), *aff'd*, 523 F. App'x 66 (2d Cir. 2013) (summary order).

Ms. Bowden-Lewis alleges that she was deprived of her due process rights during the removal hearing due to the lack of any post-termination administrative appeal procedures and because the six Defendants were not neutral adjudicators. Compl. ¶¶ 530–31. She argues that she should have received a "full trial type hearing before a neutral adjudicator." *See id.* ¶ 531.

For the purposes of the motion to dismiss, the Defendants do not contest that Ms. Bowden-Lewis had a constitutionally protected property interest in her employment. Mem. 21. The Defendants argue, however, that Ms. Bowden-Lewis received all the process to which she was due "both prior to, and subsequent to, her removal from the position of Chief Public Defender." *Id.*[2]

The Court disagrees, at least, for right now.

---

[2] Defendants also argue that Ms. Bowden-Lewis has failed to allege with specificity how each individual Defendant was personally involved in the deprivation of her right to due process. But "it is not impermissible group pleading to allege that defendants acted collectively" to violate a plaintiff's constitutional rights 42 U.S.C. § 1983. *See Cardwell*, 2020 WL 6274826, at *38.

"The court looks to state law to determine the source of a Constitutionally protected property right." *Barnes v. Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 201 (E.D.N.Y. 2012) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972), for the proposition that that constitutionally protected property interests are created and defined by existing rules or understandings "stemming from an independent source, which source supports a legitimate claim of entitlement"). Section 51-290(d) provides that "[t]he Chief Public Defender . . . shall not be removed or suspended from office during their terms except by order of the commission for just cause after due notice and hearing." Conn. Gen. Stat. § 51-290(d). The Defendants correctly point out that there is no guarantee of a trial-type hearing before a neutral adjudicator in the statute, nor is there a guarantee of post-termination administrative relief. Mem. 21–22. And Ms. Bowden-Lewis does not contest that she received both notice and a termination hearing.

As to Connecticut's law, the Connecticut Supreme Court has held that plaintiffs who are protected by for-cause removal, and do not have recourse to post-termination administrative relief, are entitled at least to the following procedural safeguards:

> First, notification in writing of the specific grounds for the proposed dismissal. Second, the meaningful opportunity to be heard in her own defense, personally or by counsel, at a public hearing, before the defendants have the power of dismissal. This meaningful opportunity includes not only the production at the public hearing, by the defendants, of the person or persons whose complaints form the basis of the ground or grounds in the notification of grounds for potential dismissal, but also the opportunity to examine at that time any or all of these complainants should the plaintiff decide to do so. Third, a statement, oral or in writing, of the reason or reasons upon which the defendants premise termination if that is the sanction imposed.

*Bartlett v. Krause*, 551 A.2d 710, 724 (Conn. 1988).

According to the Complaint, Ms. Bowden-Lewis's termination process contained the first and third procedural safeguards required by *Bartlett*. *See* Compl. ¶ 378 ("On March 5, 2024, the

defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, caused a letter entitled 'Notice of Charges and Hearing,' to be served on the plaintiff in which they extensively expanded on the reasons for which they originally had suspended the plaintiff from her position[.]"); ¶ 679 ("On June 4, 2024, in a decision, replete with distortions, misrepresentations, false claims, and untruthful claims, the defendants, Palmer, Prat, Solomon, Morin, Jefferson, and Woodard, removed the plaintiff from her position without just cause.").

The issue remaining thus is whether, in this context, she received the second of these procedural safeguards: "the meaningful opportunity to be heard in her own defense." *Bartlett*, 551 A.2d at 724. Regardless of whether Ms. Bowden-Lewis is entitled to "a full trial type hearing before a neutral adjudicator," Compl. ¶ 53, the determination of the "meaningful opportunity" prong of *Bartlett*'s procedural safeguards is better addressed at a later stage in this case, following discovery and during summary judgment, at the earliest, particularly since other claims will be going forward, and given that this inquiry should overlap with other necessary discovery. *See Dietz*, 579 U.S. at 47 (giving courts "inherent authority to manage [its] docket[ ] and courtroom[ ] with a view toward the efficient and expedient resolution of cases").

Accordingly, the Defendants' motion to dismiss Ms. Bowden-Lewis's procedural due process claim will be denied.

### 4. Qualified Immunity

"A government official is entitled to immunity from suit whenever (1) his conduct did not violate clearly established law, or (2) it was objectively reasonable for [the official] to believe that his action did not violate such law." *Naumovski*, 934 F.3d at 210 (alteration in original) (citation modified). "Although courts should resolve the question of qualified immunity at the earliest possible stage in litigation, a defendant presenting an immunity defense on a Rule

12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route[.]" *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (citation modified). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citation modified).

The Defendants claim they are entitled to qualified immunity with respect to all three of Ms. Bowden-Lewis's equal protection claims because "it was objectively reasonable for them to believe that their acts did not violate the Plaintiff's rights to be free from race or color discrimination and retaliation, or the Plaintiff's right to Procedural Due Process." In particular, the Defendants point to an independent law firm's investigative findings that, "the driving factor" leading to complaints about Ms. Bowden-Lewis "was not [her] race, but her lack of clear communication and management skills." Mem. 26.

The Court disagrees.

Because Ms. Bowden-Lewis has plausibly alleged that Defendants violated her constitutional right to equal protection—by terminating her in part for conduct for which her white predecessors had not been disciplined, by retaliating against her for making allegations of racial discrimination, and by denying her the opportunity to cross-examine witnesses whose complaints formed the bases of the justification of her termination—the Court cannot conclude that the Defendants did not violate clearly established law, or that it was objectively reasonable for them to believe that their actions did not violate clearly established law. *See Saez v. Jud. Branch*, No. 3:21-CV-915 (JAM), 2022 WL 3369737, at *6 (D. Conn. Aug. 16,

2022) ("[I]ntentional race-based discrimination in the employment context violates equal protection rights that were clearly established at the time of [the] alleged misconduct in July 2018." (citing *United States v. City of New York*, 717 F.3d 72, 92 (2d Cir. 2013))); *cf. Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118 (W.D.N.Y. 2022) (determining that the court could not "conclude that the individual defendants' actions did not violate clearly established law, or that it was objectively reasonable for them to believe their actions did not violate clearly established law" where the plaintiff "plausibly alleged constitutional violations"); *Griffin v. New York*, 122 F. Appx. 533, 535 (2d Cir. 2004) (summary order) (concluding that the district court properly refused to grant qualified immunity as the right to be free from the alleged adverse employment action based on race—namely, the defendants imposing a probationary period on the plaintiff and not on a similarly situated white employee—was clearly established).

Accordingly, the Defendants' motion to dismiss on the grounds of qualified immunity will be denied.

### B. The Conn. Gen. Stat. § 51-290(d) Claim

Defendants argue that Ms. Bowden-Lewis's claims under Section 51-290(d) must be dismissed because the Court lacks subject matter jurisdiction for two reasons. First, there is not private right of action under Section 51-290(d). Mem. 29 (citing *Gerardi v. City of Bridgeport*, 985 A.2d 328, 332 (Conn. 2010) ("In order to overcome that presumption, the [plaintiffs bear] the burden of demonstrating that such an action is created implicitly in the statute." (alteration in original) (quoting *Provencher v. Enfield,* 936 A.2d 625, 629 (Conn. 2007)))). Second, even if there was a private right of action, because the State of Connecticut has not waived its immunity to suit under this statute and has not consented to be sued in federal court, these claims are barred by sovereign immunity and the Eleventh Amendment.

In her memorandum in opposition to the motion to dismiss, Ms. Bowden-Lewis said she would no longer pursue this cause of action in this forum.

Accordingly, the Defendants' motion to dismiss Ms. Bowden-Lewis's state law claim under Section 51-290(d) will be granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.

Ms. Bowden-Lewis's Conn. Gen. Stat. § 51-290(d) claim is dismissed.

All of the other claims remain.


**SO ORDERED** at New Haven, Connecticut, this 30th day of September, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE